[Civ. No. 23557. Third Dist. Jan. 18, 1985.]

CALIFORNIA TAHOE REGIONAL PLANNING AGENCY,
Plaintiff and Appellant, v.
DAY AND NIGHT ELECTRIC, INC., et al.,
Defendants and Respondents.

900

John K. Van de Kamp, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Richard M. Skinner, Deputy Attorney General, for Plaintiff and Appellant.

Max H. Hoseit, Herman L. Koelewyn and Timothy Pomykala for Defendants and Respondents.

---

OPINION

BLEASE, J.—The California Tahoe Regional Planning Agency (CTRPA) (Gov. Code, § 67000 *ff.*) seeks the removal of a warehouse addition of Day and Night Electric, Inc. (Day and Night) constructed in violation of its land use ordinance. Day and Night was informed by CTRPA that the ordinance prohibited additions to the Day and Night property. Day and Night proceeded to construct the warehouse on the basis of a building permit it obtained from the City of South Lake Tahoe after the city repudiated CTRPA's authority and before CTRPA obtained an injunction quelling this governmental insurgency. The trial court held that CTRPA was estopped to enforce its ordinance against Day and Night. CTRPA appeals. There is no estoppel. We will reverse the judgment and direct the granting of the relief requested.

FACTS

The facts are not in dispute. In February 1978, Day and Night sought CTRPA approval for the construction of a second story on its existing building in the City of South Lake Tahoe. CTRPA informed Day and Night that the property was located in a soil type zone for which the agency land use ordinance permitted only 1 percent land coverage. The building occupied 29.30 percent. This made the building a nonconforming use and subject to a land use ordinance prohibition against alterations such as that proposed. CTRPA told Day and Night that it could have the property examined by a soils scientist for potential revision of its soil type zone characterization. Day and Night did so and the examination showed that the property qualified for a land coverage of 24 percent, a substantial increase but less than was occupied by the existing structure. CTRPA notified Day and Night of these facts and that the ordinance did not permit the proposed alteration.

In May 1979 the City of South Lake Tahoe resolved that it would no longer require CTRPA approval as a predicate for issuance of a building permit. On July 11, 1979, CTRPA filed suit against the city seeking injunctive and declaratory relief for its refusal to enforce CTRPA requirements. On August 31, 1979, CTRPA obtained a preliminary injunction precluding the issuance of building permits without compliance with CTRPA requirements.

Meanwhile, sometime in May, Robert Apocotos, president of Day and Night, read in the local newspaper that "the City was battling with CTRPA, and the paper so stated that the City would no longer require CTRPA [*sic*], they would issue building permits." Apocotos went to the city building inspector and asked what it would take to get a building permit, specifically: "To get one would I have to get a CTRPA stamp of approval?" He was told he would not have to do so.

At this point Day and Night abandoned its plans to add a second story to its facility. Instead, on May 16, 1979, Apocotos applied for a building permit to construct a warehouse addition to Day and Night's building which would increase the land coverage of the structures by some 2,400 square feet at a cost of $20,000. (At trial Apocotos testified that the addition is now worth $70,000.) Prior to approval of the permit application he signed a document that said: "IMPORTANT NOTICE—This may have an effect upon your ability to construct or carry out your proposed project. Read it carefully. ISSUANCE OF THIS PERMIT INDICATES ONLY COMPLIANCE WITH APPLICABLE CITY ORDINANCES, RULES AND REGULATIONS REGARDING THE CONSTRUCTION AND/OR USE OF PROPERTY. THE APPLICANT(S) IS (ARE) HEREBY NOTIFIED AND BY THE EXECUTION OF THIS DOCUMENT, EITHER IN PERSON OR THROUGH A DULY AUTHORIZED AGENT, UNDERSTANDS THAT OTHER GOVERNMENTAL AGENCIES OR BODIES MAY ASSERT JURISDICTION OVER THE PROPOSED PROJECT AND MAY TAKE LEGAL ACTION TO COMPEL FURTHER PROJECT REVIEW AND/OR TO IMPOSE CONDITIONS UPON A PROJECT WHICH THE CITY DOES NOT REQUIRE. IN THE EVENT OF SUCH LEGAL ACTION, THE APPLICANT(S) HEREBY AGREE TO HOLD HARMLESS AND DEFEND THE CITY OF SOUTH LAKE TAHOE, ITS OFFICERS, AGENTS AND EMPLOYEES IF SAID CITY OR ANY SUCH PERSON OR PERSONS ARE NAMED IN ANY LEGAL ACTION BROUGHT AS A RESULT OF OR ARISING FROM THE ISSUANCE OF THIS PERMIT BY THE CITY OF SOUTH LAKE TAHOE TO THE NAMED APPLICANT(S) OR ANY AGENT THEREOF." Apocotos's permit for the warehouse addition was issued on May 23, 1979. Day and Night began construction almost immediately.

On May 30, 1979, seven days after issuance of the permit, CTRPA was informed of the construction activity at the Day and Night building. A CTRPA inspector went to the site and checked the City of South Lake Tahoe building department records to verify the possible violation of the land use ordinance. The next day a notice to stop work for violation of the ordinance was served. The last carpenter on the job was packing his tools to go home at the time of service. The warehouse addition had been completed and the stop work notice was ineffectual.

This action to compel the removal of the unlawful addition and to restore the property to its condition prior to the commencement of the illegal construction was filed on December 3, 1979. On December 1, 1983, following a trial by the court, a judgment was entered in favor of Day and Night. The court ruled that the CTRPA is estopped to pursue this action because it was bound by privity to the action taken by the city and failed to timely take action to enjoin the issuance of permits by the city. This appeal followed.

DISCUSSION

I

 The CTRPA was created as a separate legal entity and a political subdivision of the state of California. (Gov. Code, § 67040.) The land use ordinance was adopted by CTRPA under its authority to effectuate the regional plan of the agency. (Gov. Code, § 67100.) As such it was binding upon CTRPA and the City of South Lake Tahoe. So much is not disputed by Day and Night. It does not challenge the validity of the CTRPA land use ordinance which barred the construction of its warehouse. Rather Day and Night claims that it relied upon the conduct of the City of South Lake Tahoe in issuing it building permits without compliance with the ordinance and that, because CTRPA is in privity with the city, it is estopped to enforce its own ordinance. That tenders a question of law since the material facts are not in dispute. (See *People* ex rel. *Dept. Pub. Wks.* v. *Volz* (1972) 25 Cal.App.3d 480, 488 [102 Cal.Rptr. 107].)

The claim of estoppel is vacuous. "Chief among the principles necessary to sustain the person claiming estoppel is damage to that person through being misled by actions or omissions . . . ." (*Johnson* v. *Johnson* (1960) 179 Cal.App.2d 326, 331 [3 Cal.Rptr. 575].) What was Day and Night misled about? CTRPA did not mislead it to believe the ordinance was invalid or would not be enforced.[1] CTRPA

---

[1]Nor may this defect be overcome by recharacterizing the action of the trial court as sustaining a defense of laches rather than estoppel. The only laches defense pled was that the agency had actual knowledge of the construction and took no action to prevent it. There is no evidence whatsoever of such actual knowledge. The trial court observed this lapse in its ruling. The record shows CTRPA served a stop work notice as soon as it learned of the construction. There can be no claim of laches in any event. It is absurd to claim that one can flaunt the law and then defend its enforcement on grounds the enforcing agency failed to prevent the violation. Even if this thesis were tenable it is barred by a failure to pursue it in the trial court. Thus consideration of this new theory is barred on appeal. Moreover, we are ill-disposed to consider the failure to assume the worst and take presumptive measures to forestall lawlessness may be viewed as unreasonable delay. The filing of a lawsuit against the city was, as these things go, quite prompt. Finally, in view of defendant's manifest knowledge it was acting in violation of CTRPA requirements, we do not perceive it as coming into equity with clean hands. (See generally, 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 8 *ff.*)

told Day and Night on more than one occasion that the ordinance barred additional construction. Day and Night had, in fact, hired a soils scientist to examine its property on the basis of this information. Nor did the city mislead Day and Night to believe that its action in issuing the building permits would preempt the jurisdiction of the *CTRPA* or forestall action by it. The city secured an acknowledgement from Day and Night "that other governmental agencies . . . may assert jurisdiction over the proposed project . . . ." CTRPA was the obvious object of that warning. Thus Day and Night was never misled about what *CTRPA* might do. Nor could it have been misled about the independent legal authority of CTRPA. (See Gov. Code, §§ 67100 and 67102.)

Nonetheless, Day and Night claims CTRPA is bound by the actions of the city which repudiated its authority and the authority of state law.[2] Day and Night relies upon *Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382 [29 Cal.Rptr. 657, 380 P.2d 97]. In that case the California Supreme Court held that a school board was bound by the actions of the State Board of Education. The school board had terminated Lerner's employment as a teacher because the state board had revoked his teaching credential. The state board reinstated Lerner's credential. The school board was held bound by the state board's actions in waiving the statute of limitations when Lerner sought reinstatement to his job.

The court said: "The estoppel binds not only the state board, but also those in privity with it. So long as no conflict of interest arises between the privies, the waiver of the statute also binds the privy of the waiving party. . . . [¶] . . . 'In general, it may be said that such privity involves a person so identified in interest with another that he represents the same legal right.' . . . [T]he agents of the same government are in privity with each other, since they represent not their own rights but the right of the government. [¶] Not only does the city board here serve as an agency of the state but also, at the time of the restoration of Lerner's credential the city board occupied a totally dependent and subordinate position to the state board, basing its decisions entirely upon the state board's revocation of the credential and its consequent legal obligation to discharge Lerner. In this case the requisite identity in legal right binds together both the state and city boards; the waiver of the state board, and the estoppel against the state

___

[2]The argument assumes that, in any event, Day and Night could rely upon the conduct of the city in the face of the manifest authority of the CTRPA to promulgate and enforce the land use ordinance. Not so. The City of South Lake Tahoe did not adopt the land use ordinance. That stems from another governmental entity acting under state law. It is the state law which makes the ordinance binding upon the entities charged with its enforcement and upon Day and Night. Day and Night is charged with the knowledge of that law. It acts in violation of that law at its peril. (Cf. *In re Berry* (1968) 68 Cal.2d 137, 149 [65 Cal.Rptr. 273, 436 P.2d 273].)

board thus extend to the city board." (Citations and fns. omitted.) (*Lerner,
supra,* 59 Cal.2d at pp. 397-399.)

*Lerner* provides no solace for defendants. Here there is no "requisite
identity in legal right," there is rather a palpable "conflict of interest"
between the purported privies. Moreover, *Lerner* explicitly notes: "Deter-
mination of privity, however, should not alone be conclusive. . . . any
waiver by the [agency upon whose conduct the estoppel is based] . . . must
subsume that the statute will not be invoked by some *other* official. Indeed,
the waiver or estoppel may result from a determination by the noncomplying
official that the public interest would best be served by not invoking the
technical defense of the statute (as in the instant case; see also *Mitchell* v.
*County Sanitation Dist.* (1957) 150 Cal.App.2d 366 [309 P.2d 930]). If so,
such a determination should not be frustrated by its unexpected rejection by
officials who have hitherto taken no independent position." (Italics in orig-
inal.) (*Id.,* at pp. 395-396.)

As we have observed, the CTRPA's obligation and authority to enforce
the land use ordinance was in no way dependent upon action by the city.
CTRPA was not subordinate to the position of the city. The independence
of their positions was known to the defendants. Indeed, Day and Night
subscribed to an explicit warning that the City of South Lake Tahoe was
not warranting that *other* officials would be bound by its approval of the
building permit. Accordingly, CTRPA was not bound by the recalcitrance
of the city.

To find an estoppel by privity in this context could have the pernicious
effect of inducing subordinate governmental entities to disregard the rule of
law. If an insurgency could effectively hamstring the superior governmental
agency in an intergovernmental relationship the parochial temptation to defy
the law would be measurably increased. There is no authority for such
anarchy. The additional cases upon which defendants rely, *Volz, supra,* and
*Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567 [108
Cal.Rptr. 293] are inapposite because, as in *Lerner,* the interests and con-
duct of the two governmental units are harmonious rather than discordant.

The trial court erred in the legal conclusion the doctrine of estoppel by
privity should apply in these circumstances. Since this conclusion is dispos-
itive we have no occasion to consider the alternate claims relating to estop-
pel.

## II

■ Day and Night's remaining claim is that the action has become moot
by deactivation of CTRPA. This issue was tendered by way of a motion in

this court to dismiss the appeal. Day and Night asserts that CTRPA's land use ordinance has been "repealed" by operation of law. It relies upon Government Code section 67131[3] which provides for deactivation of the CTRPA enabling statutes upon adoption of a regional plan by the bistate Tahoe Regional Planning Agency (Gov. Code, § 66801). The Attorney General admits that the pertinent Tahoe Regional Planning Agency plan has been adopted but submits that this has not mooted this case. We agree.

Government Code section 67131 provides that on the effective date of the ordinances and rules which meet the requirements of section (a) of article V of the Tahoe Regional Planning Compact (Gov. Code, § 66801)[4] "no further state funds shall be expended for the support of the [CTRPA] and the provisions of [the CTRPA enabling law] shall no longer be enforced." The CTRPA law is, however, only suspended because the section also provides for its reactivation. (See Gov. Code, § 9611.)

The effect of deactivation on pending matters is answered by Government Code section 67132. It provides for the resolution of pending matters including litigation. It provides that "[i]n order to provide for bringing such matters to an orderly, timely, and equitable conclusion . . . it is necessary to designate a successor to the agency for the sole and exclusive purpose of winding up these matters. . . ." Section 67132 designates the Secretary of the Resources Agency as the successor with the power "[t]o sue and be sued in the same manner and to the same extent as the deactivated agency . . . ."

This means that pending litigation is not abated and that the authority of the CTRPA and its laws are maintained and are to be applied by the successor agency for the purpose of the resolution of the litigation. Thus, the provisions of section 67131 are not to be retroactively applied to affect the status of pending matters. The lawfulness of projects in litigation at the time of deactivation are to be measured by the CTRPA ordinances. Thus the CTRPA land use ordinance governs the Day and Night project.

---

[3]This statute reads: "On the effective date of the ordinances, rules and regulations adopted pursuant to Section (a) of Article V, of the Tahoe Regional Planning Compact (as set forth in Title 7.4 (commencing with Section 66801)) in order to implement the revisions in such compact, including the revisions in the Lake Tahoe Regional Plan, adopted at the 1979-1980 Regular Session of the Legislature, no further state funds shall be expended for the support of the California Tahoe Regional Planning Agency and the provisions of this title shall no longer be enforced. At any time thereafter, the provisions of this title may be reactivated if state funds are specifically appropriated for such purposes, at which time the provisions of this title shall have full force and effect."

[4]The question whether that condition has been met is the current subject of federal litigation. We imply no opinion on the matter.

What Day and Night seeks is relief from any application of the law. It does not even claim that its warehouse addition would pass muster if the current land use planning law were applied to it. In fact Day and Night expressly refused to join issue with the Attorney General's claim, made on the inquiry of this court, that the present law also bars the warehouse addition.[5] Day and Night has therefore waived any such claim.

### DISPOSITION

The judgment is reversed with directions to grant the relief requested in the complaint.

Regan, Acting P. J., and Sims, J., concurred.

A petition for a rehearing was denied February 15, 1985, and respondents' petition for a hearing by the Supreme Court was denied April 3, 1985.

---

[5]Indeed, there is no reason to suppose that the standard for land coverage has been altered in the successor regional plan. "Except for the Regional Transportation Plan of [CTRPA], the regional plan, ordinances, rules and regulations adopted by the California Tahoe Regional Planning Agency in effect on July 1, 1980, shall be the regional plan, ordinances, rules and regulations of the Tahoe Regional Planning Agency for that portion of the Tahoe region in the State of California." (Gov. Code, § 66801, art. V, § e.)