[No. A022633. First Dist., Div. Two. May 20, 1986.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Respondent, v.
GRANT COMPANY et al., Defendants and Appellants;
THE PEOPLE ex rel. GEORGE DEUKMEJIAN, as Attorney General, etc.,
et al., Interveners and Respondents.

**COUNSEL**

Richard N. Rapoport, Hanson, Bridgett, Marcus, Vlahos & Rudy and Rudy, Rapoport & Halden for Defendants and Appellants.

George Agnost, City Attorney, and Robin Reitzes Manion, Deputy City Attorney, for Plaintiff and Respondent.

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, Charlton H. Holland and Janet G. Sherwood, Deputy Attorneys General, for Interveners and Respondents.

**OPINION**

**SMITH, J.**—Rosebud's English Pub is a restaurant and bar in San Francisco owned by 370 Geary, Inc., a California corporation, and operated on prem-

ises leased from the Grant Company, also a California corporation. The two corporations (hereafter Rosebud's) appeal from a superior court judgment ordering them to bring the restaurant and bar into compliance with state handicap access laws. Respondents are plaintiff City and County of San Francisco (the city) and interveners, on behalf of the state, the Attorney General and the Director of the Department of Rehabilitation (the state).

## BACKGROUND

The facts are undisputed. The restaurant came into being through an extensive remodeling of the leased premises in 1976 and 1977, for which the city building department issued a construction permit and conducted site inspections. Due evidently to the building department's mistaken assumption that state handicap access requirements then in effect applied only to completely new construction and not to remodeling, the department never discussed the requirements with Rosebud's before or during the work. As remodeled, the premises violated handicap access requirements principally in that telephones and restrooms were situated on the restaurant's second floor without provision for wheelchair access from the first floor. Also, the first floor itself had two levels but no ramp or other means of wheelchair access between them. The state-licensed architects and construction people on the project similarly did not inform Rosebud's of the access requirements, and Rosebud's was not independently aware of them.

The access problem did not surface until 1978, when a person in a wheelchair attempted to use the restaurant's phones and later complained to the State Department of Rehabilitation. That agency then notified the city and county's department of public works, which in turn notified Rosebud's by a letter of November 20 of that year. Both the state and the city thereafter made on site inspections of the restaurant and discussed with Rosebud's possible solutions for compliance. The state had been unaware of the city's issuance of the construction permit and (so far as the record shows) the construction itself.

When Rosebud's did not voluntarily comply with the access requirements in the face of city demands, the city ordered an administrative hearing before its director of public works. As a result of that hearing, the restaurant was declared a public nuisance, and Rosebud's was given 180 days to effect compliance. Rosebud's failed to comply.

The city filed the instant action in superior court, seeking to abate the nuisance and compel compliance. The state intervened, and the case was tried to the court on February 7 and 8, 1983. Rosebud's defenses were economic hardship and equitable estoppel. Evidence showed that the cost

of bringing the restaurant into compliance, depending on the alternative Rosebud's selected, could be anywhere from about $50,000 to $110,000 plus lost use of the facilities during construction and permanent loss of seating space.

In its statement of decision, the court found that estoppel against the city would be warranted were it not for the strong public policy favoring handicap access and that, in any event, an estoppel could not be made out against the state interveners, who were independently authorized to enforce the access requirements and who had played no part in approving the remodeling construction. Further, the burden of compliance placed on Rosebud's was significant but "nonetheless possible and compensable."[1]

Accordingly, the court ordered compliance by way of an interlocutory judgment, reserving jurisdiction to enforce compliance. However, owing to equities in Rosebud's favor, the court declined to enjoin operation of the restaurant pending compliance. █ Rosebud's timely appealed from the April 28 interlocutory judgment. Though "interlocutory" in the sense that the court reserved jurisdiction to enforce the judgment, the judgment is nonetheless final for purposes of appeal. (*In re L. A. County Pioneer Society* (1953) 40 Cal.2d 852, 857-858 [257 P.2d 1].)

## APPEAL

## I

The handicap access violations found in this case flow from two sources of state law. (Civ. Code, § 54.1; Health & Saf. Code, § 19955 et seq.) Rosebud's contends that there could be no violation of one of those sources, Civil Code section 54.1, because subparagraph (b)(3) of that section provides in part (italics added): "*Nothing in this subdivision shall require any person* renting, leasing or providing for compensation real property *to modify his property in any way* or provide a higher degree of care for a . . . physically disabled person than for a person who is not physically disabled." Only by Rosebud's perverse editing-out of the words "renting, leasing or . . ." could such a construction be even remotely seen. The subparagraph obviously applies only to the subject matter of subdivision (b), which covers "all housing accommodations offered for rent, lease, or compensation . . . ." (Civ. Code, § 54.1, subd. (b)(1).) A restaurant is clearly not "housing" as so defined.

---

[1]By "compensable," the court apparently had in mind an action by Rosebud's against the architects for indemnity, a possibility raised in both testimony and argument at trial.

■ Subdivision (a), not (b), is the provision found violated here. It declares all physically disabled persons "entitled to full and equal access, as other members of the general public, to . . . telephone facilities, . . . places of public accommodation, amusement or resort, and other places to which the general public is invited, . . ." (Civ. Code, § 54.1, subd. (a).) Rosebud's failure to conform its restaurant to handicap access requirements applicable to the 1976-1977 remodeling was found to be a denial of equal access under subdivision (a).

Rosebud's relies on *Marsh* v. *Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881 [134 Cal.Rptr. 844], for the broad proposition that Civil Code section 54.1 does not impose any duty to make public accommodations accessible to the handicapped. They grossly distort the case holding. Recognizing that section 54.1 does not itself impose any particular standards for handicap access, the court in *Marsh* held that a theater owner was not obligated by that statute *alone* to make the theater handicap accessible. The statute, the court concluded, "requires only that the operator open its doors on an equal basis to all that can avail themselves of the facilities *without violation of other valid laws and regulations.*" (Italics added, *id.*, at p. 892.) The theater in that case had been constructed in 1968 in conformance with then applicable laws (p. 886), before the enactment of statutory provisions that would have required handicap access (p. 888; Health & Saf. Code, §§ 19955, 19956), and the theater had evidently not undergone later repairs or alterations that would have mandated compliance with postconstruction standards (Health & Saf. Code, § 19959).

The situation here, by contrast, is that the restaurant *was* remodeled in violation of then current access requirements. Rosebud's denied equal access to handicapped persons, in violation of Civil Code section 54.1, subdivision (a), by operating the restaurant in violation of those requirements.[2] (See *People* ex rel. *Deukmejian* v. *CHE, Inc.* (1983) 150 Cal.App.3d 123, 133 [197 Cal.Rptr. 484].)

## II

Rosebud's takes issue with the trial court's conclusion that the elements of estoppel could not be made out against the state, as opposed to the city.

■ "The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a

---

[2]As a practical matter, it is hard to see what Rosebud's hoped to gain at this stage of litigation by showing no violation of the Civil Code. They were undisputedly in violation of the Health and Safety Code provisions cited above so that the judgment would be sustainable on that basis alone.

state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. . . . [¶] . . . ■ [A]lthough estoppel may be applied against the government when justice and right require it, the doctrine is inapplicable if it would result in the nullification of a strong rule of policy adopted for the benefit of the public. . . ." (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264], citing *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488-489, 493 [91 Cal.Rptr. 23, 476 P.2d 423]; *State of California* v. *Superior Court (Fogerty)* (1981) 29 Cal.3d 240, 244 & fn. 2 [172 Cal.Rptr. 713, 625 P.2d 256].) The party estopped need not have acted with fraudulent intent, for negligence or silence in the face of a duty to speak may suffice. (*Lix* v. *Edwards* (1978) 82 Cal.App.3d 573, 580-581 [147 Cal.Rptr. 294].) The existence of an estoppel is generally a question of fact for the trial court, whose determination is conclusive on appeal unless the opposite conclusion is the only one that can be reasonably drawn from the evidence. In the latter situation, the existence of an estoppel becomes a question of law. (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

■ The trial court found, apart from the question of public policy restraints on estopping the government, that the elements of estoppel were lacking as against the state. That conclusion is not only supportable on the evidence but is compelled as a matter of law for three of the four necessary elements. Undisputed evidence establishes that (1) the state was not apprised of the fact of the remodeling, (2) the state did nothing to induce Rosebud's reliance let alone intend to create such reliance, and (3) Rosebud's therefore could not have been injured by such reliance. The absence of any one of those elements is fatal to the claim. (*California Sch. Employees Assn.* v. *Jefferson Elementary Sch. Dist.* (1975) 45 Cal.App.3d 683, 692-693 [119 Cal.Rptr. 668].)

Rosebud's does not argue the evidence; rather, it argues that once the city is estopped, so is the state since enforcement by either entity in this case furthered the same interest, that of providing handicap access. Thus, it reasons, "If the government is estopped . . ., the identity of the enforcing officer is irrelevant." No authority is cited except for *People* v. *Department of Housing & Community Dev.* (1975) 45 Cal.App.3d 185 [119 Cal.Rptr. 266], which does not support the argument. There, the defense of laches was upheld against the state for its delay in seeking to invalidate a permit

issued by *its own department of housing,* where that delay had seriously prejudiced the private permit holder. (*Id.,* at pp. 194-195, 200.) The court noted that the department was not a separate entity, but an administrative segment of the state government. (P. 197.)

Here, on the other hand, the city was not acting as an arm or agent of the state. While both the city and the state were authorized to bring an action to enjoin violations of the law (Civ. Code, § 55.1; Health & Saf. Code, § 19958.5), it was specifically the city's responsibility, through its building department, to initially insure enforcement within its territory (Health & Saf. Code, § 19958; Gov. Code, § 4450 et seq.). Rosebud's cannot impute the city's negligence to the state. It has been held, in the context of governmental immunity, that even the state's mandatory duty to "work[] with" and "educate[]" local government officers regarding handicap access laws (Gov. Code, § 4455) "does not impose a mandatory duty to inform city officers of the provisions of [the] Health and Safety Code requiring them to enforce the handicap accessibility requirements." (*State of California* ex rel. *Dept. of Rehabilitation* v. *Superior Court* (1982) 137 Cal.App.3d 282, 285 [187 Cal.Rptr. 1].) Similarly, then, Rosebud's should not be allowed to convert the city's ignorance of handicap access laws into a failure of the state to speak sufficient to support an estoppel. (*Lix* v. *Edwards, supra,* 82 Cal.App.3d 573, 580-581.)

Furthermore, there is no identity of legal right between the city and state sufficient to bind one by its "privity" to the other. (See, e.g., *Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382, 398-399 [29 Cal.Rptr. 657, 380 P.2d 97] [city school board bound by state board's waiver of reinstatement statute of limitations where, following state board's revocation of teacher's credential, city board had automatically discharged teacher in "subordinate" reliance on state board action].) None of the city's actions in this case were taken in reliance or dependence on the state's actions. (Cf. *California Tahoe Regional Planning Agency* v. *Day & Night Electric, Inc.* (1985) 163 Cal.App.3d 898, 903-905 [210 Cal.Rptr. 48] [no estoppel of state planning agency to enforce its ordinance where building permit had been issued in defiance of state agency's jurisdiction].)

There being insufficient facts to make out an estoppel against the state, any discussion of whether public policy might prevent an estoppel from arising (*State of California* v. *Superior Court (Fogerty), supra,* 29 Cal.3d 240, 244; *Pettitt* v. *City of Fresno* (1973) 34 Cal.App.3d 813, 819-824 [110 Cal.Rptr. 262]; see policy discussions in *In re Marriage of Carney* (1979) 24 Cal.3d 725, 738 & fn. 10 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028], and *People* ex rel. *Deukmejian* v. *CHE, Inc., supra,* 150 Cal.App.3d 123, 135-136) would be academic. Even if policy would allow an estoppel

against the city, the state is not estopped and was empowered to bring the action on its own if need be. (Civ. Code, § 55.1; Health & Saf. Code, § 19958.5.)

■ Because we find the instant appeal to be only "meritless" and not quite "frivolous" in the sense required under the guidelines set forth in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-651, 653 [183 Cal.Rptr. 508, 646 P.2d 179] (see also *Custom Craft Carpets, Inc.* v. *Miller* (1982) 137 Cal.App.3d 120, 124-125 [187 Cal.Rptr. 78]), we deny the city and state's joint request for sanctions against Rosebud's (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a)).

## DISPOSITION

The interlocutory judgment is affirmed.

Rouse, J., concurred.

**KLINE, P. J.**—This is not one of the exceptional cases in which the doctrine of equitable estopel may be applied against a governmental body. In those few cases which hold that a governmental body may be estopped by the conduct of its officers, "the facts clearly established that a grave injustice would be done if estoppel were not applied, and it did not appear that use of the doctrine would defeat any strong public policy or result in the indirect enforcement of an illegal contract." (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826 [186 P.2d 124, 175 A.L.R. 747]; see also, *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423].)

Here the local state governmental agencies did not affirmatively or for a considerable period encourage reliance by appellants on the nonenforcement of state handicap access laws. (Cf. *City of Imperial Beach* v. *Algert* (1962) 200 Cal.App.2d 48, 52 [19 Cal.Rptr. 144].) Moreover, said laws embody "a strong rule of policy adopted for the benefit of the public." (*Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].) Though the belated enforcement of those laws would doubtless work a hardship on appellants, it would not work a "grave injustice." The doctrine of equitable estoppel therefore would have no application in this case even if the elements of estoppel could technically be made out against either or both of the governmental bodies.