[No. C043306. Third Dist. June 9, 2004.]

EMILY SMITH, Plaintiff and Appellant, v.
GOVERNING BOARD OF ELK GROVE UNIFIED SCHOOL DISTRICT
et al., Defendants and Respondents.

COUNSEL

Driscoll & Associates and Thomas J. Driscoll, Jr., for Plaintiff and Appellant. Kronick, Moskovitz, Tiedemann & Girard and Ann M. Murray for Defendants and Respondents.

OPINION

**MORRISON, J.**—Emily Smith unsuccessfully sought a writ of mandate to compel the Elk Grove Unified School District and its board to retroactively reclassify her as a permanent employee. We shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Smith does not challenge the statement of decision, which we summarize. Smith held a social science teaching credential, and had passed the California Basic Educational Skills Test (CBEST). In August 1999, she accepted a job as a resource specialist in Elk Grove's special education program. Her credential did not qualify her for that job, so she had to obtain an "Emergency Education Specialist Instruction Permit." She obtained a similar permit for the 2000–2001 year. In the 2001–2002 year her teaching duties changed to two-thirds time as a social studies teacher and one-third time in special education. The trial court found as follows:

"[Smith] seeks a writ of mandate . . . requiring [Elk Grove] to classify her as a permanent tenured teacher as of the beginning of the 2001–2002 school year. [Smith] contends that she is entitled to permanent status because she taught for two full years in a position requiring certification classifications, which automatically gives a teacher permanent status.

"[Elk Grove] contends [Smith] is not entitled to permanent status because she taught under emergency permits during the two years in question, and time spent teaching under an emergency permit does not count towards permanent status. [¶] . . . [¶]

"Education Code section 44929.21(b) provides: 'Every employee of a school district . . . having an average daily attendance of 250 or more who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification [qualifications], is reelected for the next succeeding school year to a position requiring certification [qualifications] shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district.'

"[Elk Grove] is a district with an average daily attendance of 250 or more. [Smith] was employed by the district for two complete consecutive school years (1999–2000 and 2000–2001) in a position requiring certification classifications (resource specialist in the special education program). [Smith] was reelected for the 2001–2002 school year. [Smith] thus appears to have the two years of service required for permanent status.

"[Smith's] case, however, falls within the scope of Education Code section 44911, which provides: 'Service by a person under a provisional credential shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district.'

"An emergency permit, such as those [Smith] obtained, is a 'provisional credential' within the meaning of Section 44911. [Citation.] [Smith's] service under emergency permits during the 1999–2000 and 2000–2001 school years thus may not be included in computing the service required for her to attain permanent status.

"[Smith] argues that those two years of service should be counted because during that time she also had a non-emergency teaching credential in the social sciences field. The Court finds this argument unpersuasive. [Smith] did not serve under her social science credential, which did not authorize her to teach in the special education field. The service [Smith] actually rendered was under her emergency permits and therefore falls squarely within the scope of Section 44911.

"[Smith] argues that she is entitled to the benefit of the special exemption set forth in the second paragraph of Education Code section 44911: 'This section shall not be applicable to teachers granted a one-year emergency credential under the conditions specified in subdivision (b) of Section 44252 and subdivision (h) of Section 44830.' Both of the referenced statutes govern basic skills testing for teachers. [Smith] argues that Section 44911 does not apply to her because she has passed the CBEST examination. [¶] . . . The exemption from Section 44911 has been held to be a very narrow one, available only to teachers who have valid teaching credentials from another state who are teaching in California under an emergency permit pending successful completion of CBEST. [Citation.] There is no evidence that [Smith] has a valid credential from another state, and accordingly she does not fall within the scope of the exemption.

"[Smith] argues that [Elk Grove] should be estopped from denying her permanent status. No evidence has been presented . . . demonstrating that [Elk Grove] ever misled [Smith] regarding her status . . . ."

DISCUSSION

I.

As the trial court found, Education Code section 44929.21, subdivision (b) (further section references are to this code) would entitle Smith to relief but for the exclusion provided by section 44911: "Service by a person under a provisional credential shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district." The "provisional credential" exclusion has an exception as follows: "This section shall not be applicable to teachers granted a one-year emergency credential under the conditions specified in subdivision (b) of Section 44252 and subdivision (h) of Section 44830." (§ 44911.) Recent cases have thoroughly detailed the history of these code sections. Several cases squarely hold that an emergency credential such as the one held by Smith is a type of "provisional credential" within the meaning of section 44911, and the exception to the exclusion of time provided therein can only be invoked by holders of sister-state credentials, as provided by sections 44252, subdivision (b) and 44830, subdivision (m), formerly subdivision (h): "Under section 44911, time spent teaching under an emergency teaching credential may not be counted in computing an employee's progress toward permanent status unless the employee is credentialed in another state and demonstrates adequate basic skills proficiency pending successful completion of the California Basic Educational Skills Test (CBEST)." (*Summerfield v. Windsor Unified School Dist.* (2002) 95 Cal.App.4th 1026, 1028 [116 Cal.Rptr.2d 233] (*Summerfield*) [emergency

*permit* case]; see *id.* at pp. 1030–1035; see also *California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 379–384 [119 Cal.Rptr.2d 642] [a *discipline* case; an employee under an emergency permit may be classified as probationary for purposes of employment protections, but holding an emergency permit equated to a provisional credential]; see also *California Teachers Assn. v. Commission on Teacher Credentialing* (1992) 7 Cal.App.4th 1469, 1473–1474 [10 Cal.Rptr.2d 126] ["emergency permit" and "emergency credential" interchangeable].)

Smith's basic argument is that unlike the teachers in those cases, she had a California teaching credential at all relevant times. But the statute refers to service "under a provisional credential," and there is no dispute that despite her social studies credential, Smith was not qualified to teach special education with it, and that she actually performed her service "under" the emergency credential, bringing her within the terms of section 44911. In her reply brief Smith presents the facts as if Elk Grove somehow compelled her into accepting a position of special education teacher, depriving her of the benefit of her social studies credential, but this argument does not change the fact that her first two years of service for Elk Grove was performed under the emergency credential.

Also in the reply brief Smith contends the exception to the exclusion means that a teacher with a sister-state credential who served under an emergency credential would be in a better position than herself, a certified California teacher who had already passed CBEST. She claims this result "is nonsensical and could not possibly comport with legislative intent." The flaw in her argument is that the narrow exceptions for sister-state teachers do not, as she infers, permit "a teacher credentialed out of state without demonstrated competence" to teach; such a teacher must have passed equivalent examinations, and has a one-year window in which to pass the California test. (See *Summerfield, supra,* 95 Cal.App.4th at pp. 1032–1035 ["we conclude the exception stated in the second paragraph of section 44911 applies only to teachers credentialed in another state who work under an emergency credential pending completion of CBEST"].) Thus, such a case would involve a teacher with a foreign credential serving under an emergency credential only until he or she either obtained a California credential or ran out of time to do so. In contrast, as stated, Smith was teaching outside her field of expertise solely by virtue of an emergency credential. The fact that she had a credential in an unrelated subject is simply irrelevant.

■ Smith claims that as to her the emergency permit was merely a temporary authorization to teach outside her demonstrated field of expertise. She also claims that the code generally assumes that tenure and permanency are not based on the particular *assignment* a teacher receives. While it may be true

that a governing board in some cases may assign a teacher to work outside the scope of his or her credential (e.g., §§ 44258.2, 44258.3), that did not happen in this case: Here, Elk Grove required Smith to obtain an emergency credential in order to teach outside her regular credential. Smith's view seems to be that the distinct types of regular credentials (e.g., social studies, English, music) are irrelevant because so long as a teacher possess any one credential, she or he can teach anything. That is not the law: Instead, as indicated, there are limited ways in which the Education Code authorizes governing boards to permit teachers to teach outside their credentials. Here, nothing about Smith's social studies credential authorized her to teach special education, and Elk Grove did not allow her to teach special education under it.

## II.

For the first time in her reply memo in the trial court, Smith raised the issue of estoppel. The trial court rejected this argument. So do we.

█ Although in some cases a public entity can be estopped, an estoppel cannot rewrite a statutory limitation on a benefit or privilege. "[N]either the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public." (*County of San Diego v. Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826 [186 P.2d 124], quoted with approval by *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 316 [96 Cal.Rptr.2d 747, 1 P.3d 63].) Although Smith infers a general public policy to protect teachers, as explained in the analogous context of civil service reclassification, such a general policy " 'should not blindly be followed so as to eradicate the clear language and purpose of the statute and allow eligibility for those for whom it was obviously not intended.' " (*City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 39 [115 Cal.Rptr.2d 151], quoting *Neeley v. Board of Retirement* (1974) 36 Cal.App.3d 815, 822 [111 Cal.Rptr. 841] [a public retirement case].) As stated more directly in a teacher tenure case, "our holding that [granting relief would exceed statutory authority] leaves no room to apply the estoppel doctrine." (*Fleice v. Chualar Union Elementary School Dist.* (1988) 206 Cal.App.3d 886, 893 [254 Cal.Rptr. 54]; see *Medina v. Board of Retirement* (2003) 112 Cal.App.4th 864, 870–871 [5 Cal.Rptr.3d 634] [citing, inter alia, *Fleice*].)

█ Further, a party invoking estoppel must have been misled by the other party, as we explained in *California Tahoe Regional Planning Agency v. Day & Night Electric, Inc.* (1985) 163 Cal.App.3d 898, 903 [210 Cal.Rptr. 48]. As the trial court found, there is no indication that Elk Grove misled Smith; at

best the facts show the parties were unclear or mistaken about the legal effect of Smith's employment pursuant to the emergency permit. That does not call for application of an estoppel against Elk Grove.

## DISPOSITION

The judgment is affirmed. Smith shall pay Elk Grove's costs of this appeal.

Blease, Acting P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied July 28, 2004, and appellant's petition for review by the Supreme Court was denied September 29, 2004. George, C. J., did not participate therein.