[Civ. No. 42119. First Dist., Div. Three. Jan. 26, 1979.]

LAURA T. TARQUINIO, Plaintiff and Appellant, v. FRANKLIN-McKINLEY SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Maurice J. Nelson and Daniel L. Gardner for Plaintiff and Appellant.

Atwood & Hurst, Stanford H. Atwood, Jr., and Frank E. Mayo for Defendant and Respondent.

## OPINION

**HALVONIK, J.**—Appellant was hired as director of bilingual-cross cultural education at the Franklin-McKinley School District in July of 1974. Appellant had a credential for the community college level but did not hold an administrative credential for kindergarten through 12th grade, a requisite of the job. Despite that lack, she was considered the best qualified applicant and the district applied for an eminence credential pursuant to Education Code section 44262.[1] She was reemployed for the 1975-1976 school year and again issued an eminence credential at the request of the district.

In May of 1976 appellant received a written evaluation of her performance signed by Dr. Lloyd McClanahan, superintendent of schools. It was somewhat short of glowing: "Her overall job performance is not satisfactory and a decided improvement is needed this coming year." This evaluation, though critical, clearly implied that appellant would be employed for the following school year, otherwise "a decided improvement this coming year" would not be "needed," and Dr. McClanahan, in his testimony below, conceded that in May the district intended to retain appellant for the 1976-1977 school year.

In July, while vacationing in Brazil, appellant became ill and was hospitalized for surgery. She informed the district of her condition and requested sick leave. The district replied that her eminence credential would expire in August and that it could not pay for her services without an appropriate credential. She asked the district to apply for an eminence credential but the district refused.

Respondents and appellant agree that in May of 1976 appellant was a "probationary employee," entitled to the procedural protections afforded one of that status by the Education Code. An employee with probationary status is deemed automatically hired each year unless otherwise notified by May 15 (§ 44949, subds. (e), (h)) and may only be dismissed during the school year for cause. (§ 44948.) "Cause" for dismissal is defined in sections 44932 and 44933 and the procedures for dismissal are set forth in section 44034 et seq.

Respondents did not dismiss appellant for cause and did not follow the mandated procedures. They insist, nevertheless, that they were justified in

---

[1]Formerly Education Code section 13133. Unless otherwise noted, all statutory references are to the Education Code as it currently reads.

terminating her because she did not possess the necessary credential. Certification definitely is contemplated in the employment of teaching and administrative personnel. The Education Code restricts employment by local boards to teachers holding current credentials (§ 44830) and confines payment to such teachers (§ 45034). The code also contemplates that the employee will take the initiative in securing the credential (§ 44857). But where an eminence or emergency credential is at issue, the school district must apply for it. (See Cal. Admin. Code, tit. 5, §§ 80045, 80024, 80026.) The code expresses no preference for the means by which a credential is secured. In short, it can be said that credential qualification is an implied condition of every teaching contract but it cannot be said that implied in every contract is the condition that the employee will obtain the credential.

■ Each party contends that it was the duty of the other to obtain the credential. Under the circumstances, the intent of the parties must be divined from the construction they have placed on the contract. ■ "Parties to a contract, in all fairness, should be bound by the construction they themselves have placed upon their agreement, particularly where they have acted thereunder for a considerable period of time." (*Standard Iron Works* v. *Globe Jewelry & Loan, Inc.* (1958) 164 Cal.App.2d 108, 118 [330 P.2d 271].) " ' "Parties are far less liable to have been mistaken as to the intention of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it. . . ." ' " (*Crestview Cemetery Assn.* v. *Dieden* (1960) 54 Cal.2d 744, 753 [8 Cal.Rptr. 427, 356 P.2d 171]; *Mitau* v. *Roddan* (1906) 149 Cal. 1, 14 [84 P. 145]; see also *Tanner* v. *Title Ins. & Trust Co.* (1942) 20 Cal.2d 814, 823 [129 P.2d 383]; *Munier* v. *Hawkins* (1961) 190 Cal.App.2d 655, 662 [12 Cal.Rptr. 274].)

■ The parties' conduct leaves no room for doubt about where to locate the responsibility for obtaining the credential. Respondents had twice before obtained the credential and there is no evidence remotely suggesting that the intention of the parties changed.[2] ■ The obligation not having shifted from respondents, it was clearly their duty to

---

[2] The trial court concluded that appellant represented to respondents that she would seek her own credential for the 1976-1977 school year but that conclusion is without any evidentiary support. Appellant was taking courses at Santa Clara University and Dr. McClanahan knew that she was doing so. But Dr. McClanahan testified that he did not know whether these courses were taken to fulfill the credential requirements and that he had had no discussions with appellant concerning her credential. Appellant's testimony was consistent with Dr. McClanahan's and there was no other testimony on the subject.

obtain the credential for, implied in every contract, is a covenant of good faith: "This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." (*Harm* v. *Frasher* (1960) 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367]; see 1 Witkin, Summary of Cal. Law (8th ed.) Contracts, § 576, p. 493.) "All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom . . . ." (Civ. Code, § 1656.)

 Respondents argue that they could not in good conscience apply for an eminence credential since such an application requires a statement that the employment is in the best interests of the students and Dr. McClanahan's 1976 evaluation concluded that appellant's performance was not satisfactory and needed improvement. But it does not follow that because one's performance needs improvement that his or her employment will not be in the best interests of the students and Dr. McClanahan testified that at the time he wrote the critical evaluation, in May of 1976, respondents intended to employ appellant for the following school year. That decision was committed to respondents' discretion (*Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93, 96-97 [37 Cal.Rptr. 194, 389 P.2d 722]), and if they concluded that further employment of appellant ill suited the welfare of the school and its pupils, they could have terminated her prior to May 15. The law required respondents to make any such adverse determination no later than May 15; after that date, respondents could only dismiss appellant for cause, applying the same standards and procedures applicable to the dismissal of a permanent employee. (§ 44948; *Pennel* v. *Pond Union School Dist.* (1973) 29 Cal.App.3d 832, 839 [105 Cal.Rptr. 817].)

Appellant was wrongfully denied employment during the 1976-1977 school year. She was not entitled to renewal of her employment nor did she have any reasonable expectation of employment for the school year 1977-1978. Accordingly appellant is not entitled to reinstatement; back pay for the year in which she was unlawfully deprived of employment is all the relief to which she is entitled. The amount of back pay may be reduced by other compensation appellant may have earned during the 1976-1977 school year. (See *Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 627 [39 Cal.Rptr. 739, 394 P.2d 579].) The burden of establishing mitigation, of course, rests with respondents. (*Id.*)

The judgment is reversed with instructions to the trial court to enter judgment for appellant after permitting respondents, if they so desire, to present evidence in mitigation of damages.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied February 23, 1979.