[No. A094488. First Dist., Div. Three. Jan. 31, 2002.]

LORI SUMMERFIELD, Plaintiff and Respondent, v.
WINDSOR UNIFIED SCHOOL DISTRICT et al., Defendants and
Appellants.

## COUNSEL

Robert J. Henry and Lawrence M. Schoenke for Defendants and Appellants.

Margaret A. Chidester and Cathie L. Fields for California School Boards Association's Education Legal Alliance as Amicus Curiae on behalf of Defendants and Appellants.

James D. Allen for Plaintiff and Respondent.

Tuttle & McCloskey, Ernest H. Tuttle III and Kay M. Tuttle for California Teachers Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**PARRILLI, J.**—Although amendments to Education Code section 44911[1] have been in effect for close to 20 years, no appellate court has interpreted them. This case requires us to do so. Lori Summerfield successfully petitioned the trial court for a writ of mandate directing the Windsor Unified School District and its governing board (collectively the District) to employ her as a permanent certificated teacher and compensate her for accrued benefits and backpay. Relying on section 44911, the District argued the two years Summerfield spent teaching under emergency permits (§ 44300) could not be counted toward the time necessary for her to attain permanent status, and thus the District had full discretion to terminate her employment when it did.

Considering the relevant statutory language and legislative history, we agree with the District's interpretation and reverse the order issuing a writ of mandate. Under section 44911, time spent teaching under an emergency teaching credential may not be counted in computing an employee's progress toward permanent status unless the employee is credentialed in another state and demonstrates adequate basic skills proficiency pending successful completion of the California Basic Educational Skills Test (CBEST).[2]

### BACKGROUND

The District hired Summerfield as a long-term substitute teacher in September 1996. Because Summerfield did not have a teaching credential, the District helped her obtain an "Emergency 30-Day Substitute Teaching Permit" from the Commission on Teacher Credentialing, which authorized her

---

[1]All statutory references are to the Education Code.

[2]Given our decision on this ground, we do not address the District's equitable arguments concerning laches and mitigation of damages.

to teach as a substitute for up to 30 days. In October 1996, the District changed Summerfield from a "substitute" to a "temporary" teacher and assigned her to replace a teacher gone on a leave of absence. Summerfield taught in this assignment for the remainder of the 1996-1997 school year under an "Emergency Long Term Multiple Subject Teaching Permit." The District initially rehired Summerfield as a temporary teacher for the following school year but in October 1997 changed her classification from "temporary" to "probationary." Another "Emergency Long Term Multiple Subject Teaching Permit" authorized Summerfield to continue teaching in the District throughout the 1997-1998 school year.

On March 9, 1998, near the end of her second year teaching in the District, the director of Summerfield's school informed her that she had successfully completed her probationary period and would be reclassified as a tenured teacher in the upcoming 1998-1999 school year. However, a month later, the District advised Summerfield that it believed her service under emergency teaching credentials did not count in her progress toward permanent employment status. Thus, the District concluded, Summerfield could not be considered a first year probationary teacher until she obtained a nonemergency credential. She did so in July 1998, when the Commission on Teacher Credentialing issued her a "Preliminary Multiple Subject Teaching Credential" valid until August 1, 2003.

The District rehired Summerfield for the 1998-1999 school year, classifying her as a first year probationary employee. However, on March 3, 1999, the District notified Summerfield that her employment would be terminated in June and she would not be reemployed for the 1999-2000 school year. Summerfield moved to Florida in July 1999 and has not taught school in California since that date.

DISCUSSION

In any California school district with an average daily attendance of 250 or more, a teacher who completes two consecutive school years as a probationary employee and is reelected for a third year becomes "a permanent employee of the district" at the beginning of the third year. (§ 44929.21, subd. (b).) School districts have complete discretion regarding the reelection of probationary employees. They may choose not to reelect a second-year probationary teacher without any showing of cause or statement of reasons, so long as they notify the teacher no later than March 15 of the teacher's second year of the decision not to reelect. (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 279 [52 Cal.Rptr.2d 115, 914 P.2d 193]; § 44929.21, subd. (b).) Any employee not given notice of nonreelection by March 15 "shall be deemed reelected for the next succeeding school year." (§ 44929.21, subd. (b).)

Summerfield taught for a total of three consecutive years in the District. Since she received no notice of a non-reelection decision during her second year of employment (i.e., the 1997-1998 school year), Summerfield claims she became a permanent employee of the District by operation of law at the commencement of the third year. As a permanent employee, she could not be summarily terminated by the District's non-reelection notice of March 3, 1999. However, the District responds that the time Summerfield worked under emergency teaching credentials does not count toward fulfilling her mandatory two-year probationary term. (See *Fleice v. Chualar Union Elementary School Dist.* (1988) 206 Cal.App.3d 886, 893 [254 Cal.Rptr. 54] [two-year probationary period is mandated by Education Code and beyond district's power to shorten].) The District bases this conclusion on section 44911, which states:

"Service by a person under a provisional credential shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district.

"This section shall not be applicable to teachers granted a one-year emergency credential under the conditions specified in subdivision (b) of Section 44252 and subdivision (h) of Section 44830."

I. *"Provisional Credentials" Include Emergency Teaching Permits*

Focusing on the first paragraph, Summerfield claims section 44911 does not apply because she worked for the District under emergency permits, which she asserts are not the same thing as "provisional credentials."

The history of California's teacher credentialing statutes and regulations was discussed in some detail in *California Teachers Assn. v. Commission on Teacher Credentialing* (1992) 7 Cal.App.4th 1469 [10 Cal.Rptr.2d 126]. Under former section 13117 of the Education Code of 1959, the Commission on Teacher Credentialing had the power to issue "provisional credentials" in accordance with certain regulations. (7 Cal.App.4th at p. 1472, citing Stats. 1959, ch. 2, § 3, p. 909.) In 1970, the Legislature replaced section 13117 with section 13126, which authorized the issuance of "emergency credentials" and stated: "With the exception of this chapter, any reference in any law or regulation to a 'provisional credential' shall be deemed to mean an 'emergency credential.'" (Stats. 1970, ch. 557, § 3, p. 1086-1087, former § 13126.) In 1977, section 13126 became section 44254. (Stats. 1976, ch.

1010, § 2, pp. 3366-3367, operative Apr. 30, 1977.) Section 44254 continued to use the nomenclature of "emergency credentials" and repeated the statement from former section 13126 deeming "provisional credentials" equivalent to "emergency credentials."[3]

In 1988, the Legislature repealed section 44254 and replaced it with section 44300. (*California Teachers Assn. v. Commission on Teacher Credentialing, supra,* 7 Cal.App.4th at p. 1473; Stats. 1988, ch. 1355, § 15, p. 4478.) Section 44300 authorizes the Commission on Teacher Credentialing to issue and renew "emergency teaching or specialist permits" under specified conditions. (§ 44300, subd. (a).) Summerfield reads much into the fact that section 44300 did not retain the final sentence from former section 44254, which had deemed the phrase "provisional credentials" equivalent to "emergency credentials." According to Summerfield, the Legislature's failure to include this sentence in section 44300 must be construed as a conscious decision to abandon the definition. Reasoning that section 44300 reflects a legislative intent for "emergency" credentials to be viewed as something different from "provisional" credentials, Summerfield concludes the Legislature's failure to amend section 44911 means that the Legislature intended section 44911 to apply *only* to those teachers who obtained "provisional" credentials under former provisions of the code.

We are not persuaded by this argument, which infers too much from the absence of a single sentence with no supporting legislative history. In keeping with the change in nomenclature from "emergency credentials" in former section 44254 to "emergency permits" in section 44300, it would not have made sense for section 44300 to repeat verbatim the sentence in section 44254 dealing with "emergency credentials." Moreover, when it enacted section 44300 in 1988, the Legislature may well have believed clarification of the phrase "provisional credentials" was no longer necessary. "Provisional credentials," as such, have not been issued since 1970.

Summerfield's argument also leads to an implausible interpretation of section 44911. Section 44911 first states that time worked under provisional teaching credentials does not count toward tenure and then makes an exception for time worked under "emergency credentials" issued pursuant to specific statutes. If the "provisional credentials" referred to in the first paragraph of section 44911 mean something different from "emergency credentials," as Summerfield argues, the statute's entire second paragraph is surplusage: The Legislature had no need to exempt the holders of certain

---

[3]It is undisputed that section 44911 was never placed in the same chapter as former sections 13126 and 44254.

emergency credentials from section 44911's rule unless it considered "emergency credentials" to be "provisional credentials" within the meaning of the statute's first paragraph. ▆ "It is a maxim of statutory construction that 'Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' [Citation.]" (*Reno v. Baird* (1998) 18 Cal.4th 640, 658 [76 Cal.Rptr.2d 499, 957 P.2d 1333].) ▆ If, in repealing section 44254, the Legislature truly intended the result Summerfield urges, it would have simultaneously amended section 44911 to delete the now-superfluous second paragraph. Indeed, the Legislature may as well have deleted *all* of section 44911 since, under Summerfield's interpretation, the statute would only apply to those few remaining teachers who received "provisional credentials" before the law changed in 1970.

The plain language of section 44911 suggests that emergency credentials are the same thing as provisional credentials, or are at least one type of provisional credential. In addition, for 18 years a separate provision of the Education Code expressly stated that the terms "emergency credentials" and "provisional credentials" meant the same thing. The Legislature is presumed to intend the well-settled meaning of its words unless it expressly states otherwise. (*In re Estate of Sax* (1989) 214 Cal.App.3d 1300, 1304 [263 Cal.Rptr. 190]; *In re Estate of Hoegler* (1978) 82 Cal.App.3d 483, 489 [147 Cal.Rptr. 289].) Thus, we conclude emergency teaching credentials, including the emergency permits issued in this case, are "provisional credentials" within the meaning of section 44911.

## II.   *Exception to Section 44911 Is Narrow*

Summerfield next contends section 44911 does not apply to her because the emergency permits she obtained fall within the exception set forth in the statute's second paragraph. The meaning of section 44911's second paragraph is somewhat puzzling. According to this paragraph, teachers who hold emergency credentials "under the conditions specified in subdivision (b) of Section 44252 and subdivision (h) of Section 44830" are exempt from section 44911 and thus may accrue time toward permanent status. (§ 44911.) Both of the statutes referred to concern basic skills proficiency testing of teachers.

Section 44252, subdivision (b) provides that, beginning February 1, 1983, no teaching credential may be issued, and no emergency credential may be renewed, unless the applicant passes a basic skills proficiency test (known as CBEST). The statute lists several exceptions to this requirement, but only one exception applies to holders of emergency credentials. Subdivision

(b)(3) of section 44252 states: "A person credentialed in another state who is an applicant for employment in a school district in this state who has passed a basic skills proficiency examination which has been developed and administered by the school district offering that person employment, or by cooperating school districts, or by the appropriate county office of education. School districts administering a basic skills proficiency examination under this paragraph shall comply with the requirements of subdivision (h) of Section 44830. Such an applicant shall be granted a nonrenewable credential, valid for not longer than one year, pending fulfillment of the basic skills proficiency requirement pursuant to Section 44252.5." The statute makes no further reference to emergency credentials.

In similar fashion, section 44830 forbids school districts from hiring a permanent, temporary or substitute teacher who has not passed CBEST, unless the teacher falls within one of the statute's listed exemptions. (§ 44830, subd. (b).) The current version of section 44830, subdivision (h) provides a temporary exemption for holders of vocational teaching credentials, conditional upon their completion of CBEST at its next offering.[4]

While Summerfield observes that section 44830, subdivision (h) is "not relevant" to her case because it affects only holders of vocational credentials, she claims her emergency credentials were issued in accordance with section 44252, subdivision (b) because she successfully completed CBEST, and thus the exception set forth in the second paragraph of section 44911 applies. In other words, Summerfield construes section 44911's reference to section 44252, subdivision (b) to mean that emergency credential holders may accrue time toward permanent status as long as they have satisfied section 44252's requirements by passing CBEST or fitting within an exemption. As Summerfield recognizes, however, such a requirement imposes *no limitation*. Since section 44300 went into effect in 1990, teachers *must* pass CBEST in order to obtain emergency credentials. (§ 44300, subd. (a)(2).) Thus, because all emergency credential holders are required to satisfy section 44252 by passing CBEST, all, according to Summerfield, are entitled to accrue time toward permanent tenure. Under Summerfield's interpretation, the exception in section 44911's second paragraph swallows the rule stated in the first. Clearly such a construction, which renders the entire statute surplusage, is disfavored. (See *Reno v. Baird, supra,* 18 Cal.4th at p. 658;

---

[4] Section 44830, subdivision (h) states: "If the basic skills proficiency test is not administered at the time of hiring, the holder of a vocational designated subject credential who has not already taken and passed the basic skills proficiency test may be hired on the condition that he or she will take the test at its next local administration."

*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22 [56 Cal.Rptr.2d 706, 923 P.2d 1].)

In 1982, the Legislature passed Assembly Bill No. 3253, which added the second paragraph to section 44911 (Stats. 1982, ch. 1388, § 6, p. 5295) and amended, among other Education Code provisions, sections 44252 (Stats. 1982, ch. 1388, § 3, p. 5290) and 44830 (Stats. 1982, ch. 1388, § 5, p. 5294). Section 44911 has not been altered since 1982; however, subdivision (h) of section 44830 was later moved and relettered as subdivision (m) of that statute. (Stats. 1983, ch. 1038, § 2, pp. 3631-3633.) The original section 44830, subdivision (h) addressed the hiring of teachers from outside California and was clearly a companion statute to section 44252, subdivision (b)(3). Former section 44830, subdivision (h) allowed school districts to hire teachers who were credentialed in another state but had not yet taken CBEST, and it observed that such teachers would be authorized to teach by "an emergency credential pursuant to paragraph 3 of subdivision (b) of Section 44252 . . . ." (Former § 44830, subd. (h).)[5]

When the Legislature added the second paragraph to section 44911, it created an exception for teachers who held emergency credentials pursuant to two specific statutes, "subdivision (b) of Section 44252 *and* subdivision (h) of Section 44830." (§ 44911, italics added.) It simultaneously enacted a procedure, in sections 44252, subdivision (b)(3) and 44830, subdivision (h), by which credentialed teachers from other states could obtain one-year emergency credentials before completing CBEST. Thus, it appears the Legislature intended to create a narrow exception to section 44911 for individuals who possess valid teaching credentials from another state: Although such individuals may teach under an emergency credential during their first year in California, while they are waiting to take CBEST, the Legislature has determined that this year should count toward their acquisition of permanent employment status. Any other reading of the second paragraph of section 44911 ignores the Legislature's use of the word "and" between its references to sections 44252 and 44830.

Our interpretation finds support in the legislative history surrounding Assembly Bill No. 3253. Senate amendments to the bill were proposed, in

---

[5]Until recently, former subdivision (h) was preserved in section 44830, subdivision (m). However, in 1998, the Legislature deleted this provision altogether. (Stats. 1998, ch. 547, § 6, eff. Sept. 17, 1998.) Subdivision (m) currently states: "Notwithstanding any other provision of law, a school district may hire a certificated teacher who has not taken the state basic skills proficiency test if that person has not yet been afforded the opportunity to take the test. The person shall then take the test at the earliest opportunity and may remain employed by the district pending the receipt of his or her test results."

part, to exempt job applicants who hold teaching credentials in another state from the requirement that they pass CBEST before beginning work. (Assem. Off. of Research, Concurrence in Sen. Amendments to Assem. Bill No. 3253 (1982-1983 Reg. Sess.) Aug. 25, 1982, p. 2.) In a letter to the Governor, the bill's author, Assemblyman Gary Hart, described this aspect of the amended bill. Assemblyman Hart stated that Assembly Bill No. 3253: "[a]llows local school districts to develop their own basic skills test to administer to teachers recruited in other states, so that those teachers can be hired pending passage of the California basic skills test without forfeiture of the assurance of basic skills proficiency." (Assemblyman Hart, sponsor of Assem. Bill No. 3253 (1982-1983 Reg. Sess.) letter to Governor, Sept. 3, 1982.) In contrast, Summerfield has directed us to *no* legislative history suggesting the Legislature ever intended to abolish for all emergency credential holders section 44911's general rule that time worked under a provisional teaching credential does not count toward acquisition of permanent status.

In short, we conclude the exception stated in the second paragraph of section 44911 applies only to teachers credentialed in another state who work under an emergency credential pending completion of CBEST. This interpretation is consistent with numerous provisions of the Education Code expressing the legislative preference for fully credentialed teachers and the goal of reducing the number of teachers employed under temporary or emergency credentials. (See, e.g., §§ 45023.1, subd. (a)(1) [salary increases available only to credentialed teachers, not those holding emergency permits], 44225.7, subd. (c) ["state policy directs the assignment of interns to classrooms when available in a given region, with decreased reliance on persons serving on emergency permits or credential waivers"].)

Because Summerfield did not hold a valid teaching credential from another state, the statutory exception does not apply, and the two years Summerfield worked for the District under emergency permits may not be included in computing her years of service toward attainment of permanent status. (§ 44911.) Accordingly, the District had complete discretion to terminate Summerfield's employment by issuing a notice of non-reelection before March 15 of her first probationary year,[6] and the trial court erred in granting Summerfield's petition for writ of mandate.

---

[6]Although a District employee initially, mistakenly, classified Summerfield as a probationary employee while she continued to work under an emergency permit, it is well settled that the two-year probationary period for teachers is mandatory and may not be shortened by the advice or actions of a school district. (*Fleice v. Chualar Union Elementary School Dist., supra,* 206 Cal.App.3d at p. 893.)

## DISPOSITION

The judgment is reversed. The District shall recover costs of the appeal.

McGuiness, P. J., and Corrigan, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 1, 2002.