[No. F037363. Fifth Dist. May 13, 2002.]

CALIFORNIA TEACHERS ASSOCIATION et al., Plaintiffs and Appellants, v.
GOVERNING BOARD OF THE GOLDEN VALLEY UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

370

## COUNSEL

Tuttle & McCloskey, Ernest H. Tuttle III and Kay M. Tuttle for Plaintiffs and Appellants.

Stroupe & de Goede and Bryan G. Martin for Defendants and Respondents.

## OPINION

ARDAIZ, P. J.—The California Teachers Association (CTA) and Tiffani Curran (Curran) filed a petition for a peremptory writ of mandate after Curran was informed in a letter dated August 3, 1999, that she would not be employed as a teacher by the Golden Valley Unified School District (Golden Valley) for the 1999-2000 school year. The trial court denied the petition and ruled a teacher with only an emergency permit may not be classified as a probationary employee and, therefore, the statutory procedures of notice and a hearing do not apply to the dismissal of such a teacher.

Curran appealed, contending (1) she was a probationary employee during the 1998-1999 school year who was not given a nonreelection notice under Education Code section 44929.21[1] and, therefore, was automatically rehired for the following school year; (2) by virtue of her written contract with Golden Valley classifying her as a probationary employee, she was entitled to the statutory procedures applicable to the dismissal of probationary employees; (3) if, alternatively, she should have been classified as a temporary employee instead of a probationary employee, Golden Valley was required to follow the statutory procedures applicable to the dismissal of a temporary employee; and (4) Golden Valley was estopped from denying Curran employment for the 1999-2000 school year because she relied upon its written offer and contract.

We hold Curran's contract properly classified her as a probationary employee and she was entitled to prior written notice of dismissal and the right to a hearing. Accordingly, we reverse and remand.

### PROCEDURAL BACKGROUND

On March 6, 2000, CTA and Curran filed a petition for a peremptory writ of mandate against Golden Valley and its governing board requesting payment to Curran of backpay and benefits for the 1999-2000 school year,

---

[1] All further statutory references are to the Education Code, unless otherwise indicated.

declaratory relief that Curran was wrongfully terminated, and attorney fees. Curran filed declarations and points and authorities in support of her petition. Golden Valley filed an answer, as well as declarations and points and authorities in opposition to the petition.

On June 14, 2000, and July 12, 2000, counsel presented oral argument to the trial court; no witnesses testified before the court. After the presentation of oral argument on July 12, 2000, the trial court stated on the record the reasons for its denial of the petition. CTA and Curran filed a notice of appeal from the trial court's decision.

## FACTS

During the 1998-1999 school year, Curran was employed by the Madera Unified School District under a written contract that classified her as a probationary employee. Her qualification to teach was based on an "Emergency Long Term Multiple Subject Teaching Permit" issued by the Commission on Teacher Credentialing of the State of California (CTC), which was valid from August 1, 1998, to September 1, 1999. She was assigned to teach sixth grade math and science at Webster Elementary School.

During the school year, Madera Unified School District underwent reorganization and Webster Elementary School became a part of the newly created Golden Valley Unified School District. Golden Valley began teaching operations as of July 1, 1999, the first day of the 1999-2000 school year.[2] On May 27, 1999, Golden Valley presented Curran with a letter and a "Certificated Employee Notice/Offer of Employment" relating to employment for the 1999-2000 school year. Curran saw the base salary in the offer was incorrect and told Golden Valley that she should have been placed in class 5, station 2, of the salary schedule. Golden Valley changed the salary amount and presented Curran with a revised offer dated June 15, 1999. Curran accepted the revised offer by signing and returning it to Golden Valley.

The contract formed by the parties listed Curran's status as "PROBATIONARY (2)"[3] and contained the following provision: "Contingent upon fulfilling the requirements to obtain a valid California Teaching Credential or evidence that I have fulfilled all P18L requirements of my current credential and am enrolled in an approved CTC, college or university program, am

---

[2]"The school year begins on the first day of July and ends on the last day of June." (§ 37200.)

[3]This designation means the teacher is in his or her second year of probationary service.

enrolled in coursework that will qualify me for a Multiple Subjects Credential, and/or PASS The MSAT prior to August 16, 1999."

In July 1999, after Curran returned from her summer vacation, she met with the principal of Webster Elementary School to begin preparing for the new school year. The principal told Curran that she did not know if Curran would be working there because Curran had not fulfilled the contingencies in the contract. Subsequently, Curran received a letter from Golden Valley scheduling a meeting with the superintendent and the principal for July 27, 1999. The letter stated the purpose of the meeting was to establish if Curran had met the requirements of the contract and requested her to bring to the meeting (1) her test results from the Multiple Subject Assessments for Teachers (MSAT) of June 5, 1999, (2) a copy of her spring 1999 coursework, (3) her application for fall 1999 coursework at California State University at Fresno, (4) a receipt of tuition paid, and (5) the name of her credential adviser at the university.

At the July 27, 1999, meeting, Curran presented the requested documents and told the superintendent that she had not passed the MSAT test. The superintendent then stated Curran had not fulfilled the requirements of the contract and that Golden Valley could not hire any teacher with an emergency permit until teachers with full credentials had been interviewed. When the superintendent was told the contract did not require Curran to pass the MSAT, he asked for 72 hours to think about it and talk to the governing board.

On August 3, 1999, Golden Valley sent Curran a letter stating (1) Golden Valley decided not to employ her for the 1999-2000 school year, (2) "the District's offer of employment to you was contingent upon your fulfilling the requirements to obtain a California teaching credential," (3) Curran did not complete many of the basic requirements to obtain a teaching credential, "including student teaching, additional coursework, passage of the [MSAT] and passage of the reading initiative objective test (RICA)," and (4) Golden Valley concluded it would not be in the best interest of Golden Valley to continue Curran's employment on an emergency certificate in light of the availability of fully credentialed applicants.

An attorney representing Curran sent a letter to Golden Valley expressing the view that Curran had fulfilled the contingencies in the contract and, as a result, was entitled to employment for the 1999-2000 school year. The dispute was not resolved and Curran filed her petition for a writ of mandate in March 2000.

## DISCUSSION

When school districts are reorganized, the employment rights of "certificated employees" are protected under section 35555. When such employees are probationary, they "shall be employed by the district which thereafter maintains the school" where the employee worked prior to the reorganization and their "classification by such district shall be the same as it would have been had the school . . . continued to be maintained by the district [that] formerly maintained it." (§ 35555.)

In this case, the reorganization of Madera Unified School District and the creation of Golden Valley School District had progressed to the point where Golden Valley had entered into a written contract with Curran and the 1999-2000 school year had began. Therefore, even if Curran was a certificated employee within the meaning of the provisions of section 35555, those provisions would no longer directly govern the employee/employer relationship between Curran and Golden Valley at the time of Curran's dismissal. By then, that relationship was defined by the written contract and the provisions of the Education Code generally applicable to the employment of teachers. Therefore, the issue presented is whether the dismissal of Curran violated her contractual or statutory rights. Curran's statutory claims center on section 44915 and whether it required or permitted Golden Valley to classify her as a probationary employee.

## I

## STANDARD OF REVIEW

■ Ordinarily, a trial court's findings and judgment on a petition for writ of mandate are upheld if supported by substantial evidence. (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 618 [94 Cal.App.4th 76a, 113 Cal.Rptr.2d 309].) However, the trial court's construction of a statute is purely a question of law and is subject to de novo review on appeal. (*Id.* at p. 619.) The principles governing the proper construction of a statute are well established and are set forth in *Neumarkel v. Allard* (1985) 163 Cal.App.3d 457, 461 [209 Cal.Rptr. 616]: ■ "Courts must ascertain legislative intent so as to effectuate a law's purpose. [Citations.] 'In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what has been inserted; . . .' [Citation.] Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] ' "The court should take into account matters such as *context*, the

object in view, the evils to be remedied, the history of the times and of *legislation upon the same subject,* public policy, and contemporaneous construction." ' [Citations.] 'Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]"

## II

### TEACHERS WITH EMERGENCY PERMITS MAY BE CLASSIFIED BY A SCHOOL DISTRICT AS PROBATIONARY EMPLOYEES.

As background on the importance of classification as a probationary employee, we observe it brings a teacher two primary benefits.[4] First, service as a probationary employee generally counts toward completing the two-year probationary period required before an employee is classified as permanent. (§ 44929.21, subd. (b).) Second, districts are restricted in the ways they may end the employment of a probationary employee.

Midyear dismissals of probationary employees generally must be for unsatisfactory performance or for cause and such a dismissal requires the district to give the employee 30 days prior written notice and the right to a hearing. (§ 44948.3, subd. (a).) The predecessors of this provision have protected probationary teachers for over 80 years. Former Political Code section 1609 gave school boards the power "[t]o dismiss probationary teacher during the school year for cause only . . . ." (Stats. 1921, ch. 878, § 1, p. 1665; see Stats. 1927, ch. 875, § 1, p. 1915; Stats. 1935, ch. 690, § 18, p. 1884, former School Code, § 5.680; Stats. 1943, ch. 71, p. 573, former § 13581; Stats. 1959, ch. 2, p. 948, former § 13442.)

When ending the employment of a probationary employee at the close of the school year, school districts are subject to fewer restrictions. A district may "choose not to reelect a probationary teacher for the ensuing school year without any showing of cause, without any statement of reasons, and without an administrative hearing or appeal, as long as the district gives notice to the teacher on or before March 15 of the employee's second year of employment. (§ 44929.21(b); *Grimsley [v. Board of Trustees* (1987)] 189 Cal.App.3d [1440,] 1447-1448 [235 Cal.Rptr. 85].)" (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 279 [52 Cal.Rptr.2d 115, 914 P.2d 193].) Similarly, under former Political Code section 1609, subdivision (i), a school district could notify a probationary teacher on or before the 10th of June that the teacher's services would not be retained for the ensuing school year. (Stats. 1921, ch. 878, § 1, pp. 1665-1666.)

---

[4]Another benefit is the right to reemployment in certain situations. (See § 44957. subd. (a).)

This case does not directly involve the first benefit of probationary status, i.e., counting service towards completion of the mandatory two-year probationary period. That situation was addressed recently by the First District in *Summerfield v. Windsor Unified School Dist.* (2002) 95 Cal.App.4th 1026 [116 Cal.Rptr.2d 233] (*Summerfield*). Instead, Curran seeks the benefit of the statutory provisions restricting dismissal. Curran contends she was a probationary employee for purposes of dismissal from employment and, as a result, she was entitled to 30 days' notice and a right to a hearing under section 44948.3, subdivision (a). It is undisputed that Golden Valley did not give Curran such notice or right to a hearing prior to her dismissal.

Golden Valley argues Curran was not entitled to the notice and hearing given to probationary employees because that classification requires the teacher to be certificated, and never applies to a teacher holding an emergency permit from the CTC. In response, Curran presents two theories as to why she was entitled to be treated as a probationary employee. First, Curran asserts section 44915 required Golden Valley to classify her as a probationary employee. Second, Curran asserts the school districts chose to classify her as a probationary employee in the written contracts for the 1998-1999 and 1999-2000 school years, this classification was not prohibited by statute and, therefore, the classification fell within the freedom of contract allowed the parties by the Education Code.

The Education Code does not explicitly resolve this dispute. On one hand, the statutory provisions do not explicitly prohibit a teacher with an emergency permit from being classified as a probationary employee. On the other hand, no statutory provision explicitly delineates how teachers with emergency permits should be classified.[5] Consequently, we must determine whether the general rule set forth in section 44915 concerning when a teacher should be classified as a probationary employee applies to a teacher with an emergency permit.

Neither party has cited, nor are we aware of, any published appellate decision that explicitly holds whether or not the general rule of section 44915 applies to a teacher with an emergency permit. In one reported decision, a school district classified a teacher with an emergency permit as "probationary" and the court stated the classification was a mistake "while she continued to work under an emergency permit." (*Summerfield, supra,* 95 Cal.App.4th at p. 1035, fn. 6.) However, that statement was dicta. Consequently, in construing the general rule for the classification of teachers set forth in section 44915, we face an issue of first impression.

---

[5]In comparison, section 44885.5, subdivision (a), provides that certain persons employed by school districts as district interns shall be classified as probationary employees. (*Welch v. Oakland Unified School Dist.* (2001) 91 Cal.App.4th 1421, 1429 [111 Cal.Rptr.2d 374].)

## A. *Literal Construction of Section 44915.*

Section 44915 states: "Governing boards of school districts shall classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees."

Golden Valley did not classify Curran as a permanent or as a substitute employee. Therefore, under the plain language of section 44915, if Curran was employed in a "position[ ] requiring certification qualifications," then Golden Valley was required to classify her as a probationary employee.[6]

The phrase "position requiring certification qualifications" is defined in section 44001 to include "every type of service for which certification qualifications are established by or pursuant to Section 44000 to 44012, inclusive, Section 44065 and [the chapter on teacher credentialing, sections 44200 to 44374]." The chapter of the Education Code governing teacher credentialing[7] sets forth the certification qualifications for service as a grade school or high school teacher. There is little doubt, and Golden Valley concedes, that the position of teaching sixth grade math and science is a position requiring certification qualifications as opposed to a position not requiring certification qualifications. Consequently, under a literal construction of section 44915, Curran was employed in a position requiring certification qualifications and, thus, was entitled to be classified as a probationary employee.

## B. *Construction of Section 44915 in the Context of the Statutory Framework.*

Golden Valley asserts a literal interpretation is not appropriate because it is inconsistent with the way in which the Legislature has treated teachers with emergency permits throughout the Education Code. Golden Valley's assertion is based on two premises. First, in enacting section 44915 and its predecessors, the Legislature presupposed it would only be applied to certificated employees. Second, a certificated employee must have a credential listed in subdivision (b) of section 44251, not the "emergency permit" referenced in subdivision (c) of section 44251. (See *Jones v. Oxnard School*

---

[6]California Code of Regulations, title 5, section 5501, subdivision (c), recognizes four classifications—substitute, temporary, probationary and permanent. The classification of "temporary employee" is authorized by section 44920, but is inapplicable to the facts of this case because "temporary employees are only to be hired if there are long-term vacancies due to a teacher's leave of absence." (*Welch v. Oakland Unified School Dist., supra,* 91 Cal.App.4th at p. 1431.) Curran was not filling a long-term vacancy.

[7]Chapter 2 (commencing with § 44200) of part 25 of division 3 of title 2 of the Education Code.

*Dist.* (1969) 270 Cal.App.2d 587, 590 fn. 1 [75 Cal.Rptr. 836] [parties refer to teachers holding provisional credentials as "noncertificated teachers"].)[8]

In considering whether to reject a literal construction of section 44915, we examine the historical development of the provisions concerning (1) classification of teachers, (2) emergency and provisional credentials, (3) counting teacher's service towards attaining permanent classification, (4) the dismissal of teachers, and (5) minimum annual salaries for teachers.

### 1. *Historical development from 1921 to 1959.*

In 1921, the Legislature (1) authorized school boards to classify teachers as substitute, probationary or permanent; (2) specified the manner in which teachers of each classification could be dismissed; and (3) required persons who had "been successfully employed as teachers by the district for two consecutive school years" to be classified as permanent teachers. (Stats. 1921, ch. 878, § 1, pp. 1665-1666, enacting former Pol. Code § 1609, subds. (c), (d), (e), (h), (i) & (j).) At that time, emergency or provisional credentials were not authorized.

In 1927, former Political Code section 1609 was amended and employment "in positions requiring certification qualifications" was required for an employee to be classified as substitute, probationary or permanent. (Stats. 1927, ch. 875, § 1, p. 1915, amending former Pol. Code, § 1609, subds. (c), (d) & (e).) The same phrase is used in the current versions of section 44917 (substitute employees), section 44915 (probationary employees) and section 44929.21, subdivision (b) (permanent employees).

World War II created a shortage of qualified teachers for the public schools of California because of the entrance of men and women into the military service and war industry. (Stats. 1943, ch. 815, § 6, p. 2615.) The Legislature responded by authorizing the issuance of emergency credentials.

---

[8]"Certificated person" is defined as "a person who holds one or more documents such as a certificate, a credential, or a life diploma, which singly or in combination license the holder to engage in the school service designated in the document or documents." (§ 44006.)

When used as a noun, the word "certificate" means, "the document issued by a county board of education to license the holder to perform the service specified in the certificate." (§ 44004.) The record presented on appeal by Curran does not contain a document issued by the county board of education. As currently defined, "credential" includes "a credential, certificate, life document, life diploma, permit, certificate of clearance, or waiver issued by the [CTC]." (§ 44002, as amended by Stats. 2001, ch. 342, § 2.) Prior to the 2001 amendment, "credential" was defined as "a document issued by the State Board of Education or the Commission for Teacher Preparation and Licensing, authorizing a person to engage in the service specified in the credential." (Former § 44002, added by Stats. 1976, ch. 1010, § 2, p. 3345.)

(Stats. 1943, ch. 815, § 1, p. 2614, adding former School Code, § 5.127-1.) To prevent service under an emergency credential or war emergency credential from counting towards attaining classification as a permanent employee, a specific exclusion was enacted. (Stats. 1943, ch. 71, p. 559, enacting Ed. Code; former § 13099.2, added as urgency measure by Stats. 1943, ch. 417, § 2, p. 1956.)

The enactment of this exclusion was necessary only if the Legislature believed that service under an emergency credential could include employment "in position[s] requiring certification qualifications." No other exclusions affecting teachers with emergency credentials were enacted; in particular, the Legislature did not exclude teachers serving under an emergency credential from (1) the provisions concerning classification as a probationary teacher and the dismissal of such a teacher (Stats. 1943, ch. 71, pp. 559, 573, adding former §§ 13101, 13581-13583), or (2) the minimum salary requirements for persons employed "full time in a position requiring certification qualifications." (Stats. 1943, ch. 71, p. 580, adding former § 13842.1.) The existence of the specific exclusion and the absence of an enactment excluding emergency credential holders from being classified as probationary employees implies the Legislature intended teachers holding emergency credentials to be eligible for probationary classification and the benefits of that classification, except the benefit of counting that service towards attaining permanent status.

In 1947, the Legislature authorized the issuance of provisional credentials to give persons teaching under emergency credentials the opportunity to qualify for regular credentials. The minimum standard for a provisional general elementary credential was a valid emergency general elementary credential, two years successful experience as a teacher under an emergency general elementary credential, the completion of at least 60 semester units of college work with a C or better average, and any other requirements prescribed by the State Board of Education. (Stats. 1947, ch. 329, § 1, p. 893, adding former § 12130.1.) Paralleling the provisions of former section 13099.2 then in effect governing emergency credentials, the Legislature enacted former section 13099.3 which stated that service under a provisional credential did not count toward attaining permanent classification (Stats. 1947, ch. 329, § 5.1, p. 893, adding former § 13099.3.),[9] but the Legislature did not exclude teachers serving under a provisional credential from (1) the provisions governing the classification of teachers as probationary and

---

[9]Former section 13099.3 provided, "Service by a person under a provisional credential shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district." (Stats, 1947, ch. 329, § 5.1, p. 893.)

protecting probationary teachers from unauthorized dismissal or (2) the provisions governing minimum salary. (Stats. 1947, ch. 1026, § 1, p. 2289, adding former § 13842.) As with the wording and structure of the provisions concerning emergency credentials, the wording and structure of the provisions concerning provisional credentials imply the holder of a provisional credential was eligible for probationary classification.

The foregoing implications of legislative intent were strengthened in 1951 when the Legislature amended the minimum pay provisions and set a separate minimum annual salary for persons employed "full time in a position requiring certification qualifications and serving under other than an emergency credential or provisional credential." (Stats. 1951, ch. 1157, §§ 1, 2, pp. 2939-2940, amending former §§ 13842, 13842.1.) These amendments are further recognition by the Legislature that teachers serving under an emergency credential or provisional credential were subject to the rules generally applicable to teachers employed in "positions requiring certification qualifications," unless a specific exclusion was enacted. Again, no provision was enacted to exclude teachers serving under an emergency or provisional credential from classification as a probationary teacher or from benefiting from the restrictions on dismissal of probationary teachers.

In 1953, the Legislature repealed former sections 12130.1, 12131.2 and 12138 concerning minimum standards for provisional and emergency credentials. (Stats. 1953, ch. 1372, § 3, p. 2952.) In their place, the Legislature enacted former sections 12060, 12061 and 12062. Those sections only authorized the issuance of provisional credentials in accordance with regulations adopted by the State Board of Education and empowered it to prescribe the minimum standards for such credentials. (Stats. 1953, ch. 1372, § 2, p. 2952.) No authorization was given for emergency credentials.

2. *Historical development of statutory framework after 1959.*

In 1959, the Legislature reenacted the Education Code. The sections authorizing the issuance of provisional credentials, i.e., former sections 12060, 12061 and 12062, became former sections 13117, 13118 and 13119. (Stats. 1959, ch. 2, p. 909, enacting former §§ 13117, 13118 & 13119.) The history of the legislation concerning provisional credentials and the change in nomenclature to emergency credentials and then emergency permits, which took place from 1959 through the 1988 enactment of section 44300, is set forth in *California Teachers Assn. v. Commission on Teacher Credentialing* (1992) 7 Cal.App.4th 1469, 1472-1474 [10 Cal.Rptr.2d 126], and will not be detailed here.

The statutory language requiring school districts to "classify as probationary employees, those persons employed in positions requiring certification

qualifications for the school year, who have not been classified as permanent employees or as substitute employees" was not altered by the 1959 legislation and remains intact today as section 44915. (See Stats. 1943, ch. 71, p. 559, enacting former § 13101; Stats. 1959, ch. 2, p. 937, enacting former § 13334.)

After 1943, while the provisions concerning emergency credentials and provisional credentials were often the subject of legislative action and the language concerning the classification of employees as probationary was not changed, the exclusion of service by teachers holding provisional credentials from the general rule of counting service towards attaining a permanent classification was amended once. Under the Education Code of 1959, former section 13099.3 was repeated without change as former section 13331. (Stats. 1959, ch. 2, p. 937, adding former § 13331.) The language of former section 13331 became the first paragraph of section 44911. A second paragraph was added in 1982 (Stats. 1982, ch. 1388, § 6, p. 5295), and section 44911 now reads in full:

"Service by a person under a provisional credential shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district.

"This section shall not be applicable to teachers granted a one-year emergency credential under the conditions specified in subdivision (b) of Section 44252 and subdivision (h) of Section 44830."

The term "provisional credentials" as used in section 44911 was construed recently to include emergency permits and, as a result, the first paragraph of section 44911 was held to exclude the service of a teacher holding an emergency permit from counting in computing the teacher's progress towards permanent status. (*Summerfield, supra,* 95 Cal.App.4th at pp. 1031-1032.) As stated above, this exclusion in section 44911 would not be necessary unless service by teachers with emergency permits was otherwise eligible to be counted towards permanent status. Because only service as a probationary employee counts towards permanent status (§ 44929.21, subd. (b)), the existence of the exclusion in section 44911 implies that teachers with emergency permits can be classified as probationary employees.

The enactment of the second paragraph of section 44911[10] also implies the Legislature intended teachers with emergency permits to be eligible for classification as probationary employees. The second paragraph contains an

---

[10]The legislative history concerning the second paragraph of section 44911 is discussed in *Summerfield, supra,* 95 Cal.App.4th at page 1031.

exception to the exclusion set forth in the first paragraph of section 44911. The First District concluded the exception applies only to service by teachers credentialed in another state who are serving under an emergency credential pending completion of a basic skills proficiency test. (*Summerfield, supra*, 95 Cal.App.4th at pp. 1031-1032.) The net effect of the exception to the exclusion is to place teachers within the scope of the exception back under the general rule of section 44929.21 concerning counting service towards attaining permanent status. The exception does not set forth a positive rule; rather it is stated as an exclusion to the exclusion. Thus, teachers within the scope of the exception can only reap its benefits *if they were within the general rule in the first instance*. Because only employees classified as probationary employees are within the general rule, it follows that teachers holding emergency permits and satisfying the other conditions of the exception may be classified as probationary employees. In contrast, Golden Valley's position that every teacher with an emergency permit is precluded from being classified as a probationary employee renders the second paragraph of section 44911 nugatory.

Accordingly, we construe section 44915 to allow a teacher serving under an emergency permit to be classified as a probationary employee. This construction harmonizes section 44915 with sections 44911 and 44929.21 rather than rendering section 44911 superfluous. As a consequence of this construction, teachers serving under an emergency permit who satisfy the requirements of section 44915 are entitled to the statutory protections governing the dismissal of a probationary employee.

The foregoing analysis leads to the rejection of Golden Valley's argument that teachers serving under an emergency permit cannot be given probationary status because of the anomalous possibility that they could achieve permanent status if rehired after two years of service. Section 44911 precludes this anomaly. Our statutory analysis also causes us to reject the argument that the Legislature presupposed section 44915 would not apply to the holders of emergency permits.[11] While there is no question the Legislature has created many distinctions between teachers with a preliminary or

---

[11]While we agree with the First District's analysis of section 44911 set forth in *Summerfield, supra*, 95 Cal.App.4th 1026, we disagree with the dicta in footnote 6 (*id.* at p. 1035), which states it was a mistake to classify the teacher as a probationary employee while she worked under an emergency permit. As we have discussed, if a holder of an emergency permit cannot be classified as a probationary employee, then section 44911 is superfluous and the First District's detailed analysis of its provisions was unnecessary. Footnote 6 should be viewed in its factual context and narrowly interpreted to mean service under an emergency permit may not be counted towards the two-year probationary period, unless the second paragraph of section 44911 applies.

life credential and teachers with an emergency permit (see, e.g., § 44300), the existence of these distinctions does not compel a statutory construction that renders section 44911 nugatory. Rather, the existence of the explicit distinctions implies the Legislature is capable of enacting a separate rule for holders of emergency permits when deemed appropriate.

We recognize the existence of public policy arguments for and against giving emergency permit holders the same protections concerning midyear dismissals provided to probationary employees holding a preliminary or life credential. Also, public policy considerations could justify protecting emergency permit holders from unilateral midyear dismissals yet excluding them from the automatic reelection provisions generally applicable to second year probationary employees. However, the question before us is not whether, as a matter of policy, our construction of the statutes achieves the optimal balance of competing societal interests. Our role is confined to construing the statutes in a manner that effectuates the apparent intent of the Legislature. The current Legislature is free to weigh the competing public policies affected by this decision and amend the statutes to strike a different balance among those policies.

## III

### Golden Valley Was Implicitly Required to Apply for the Emergency Permit.

■ Golden Valley argues its employment of Curran was prohibited by section 44300, subdivision (a)(3)(A), because it could not legitimately provide the CTC with a declaration of need to justify the CTC issuing an emergency permit to Curran for the 1999-2000 school year in light of the more than 25 applications Golden Valley received from teachers who were fully credentialed and qualified to teach.[12] Golden Valley asks, in effect, for a rule of law that would allow school districts to minimize their risk and uncertainty by signing contracts with teachers holding emergency permits in the early phases of the recruiting period for the upcoming school year and then continue to search for fully credentialed teachers to replace the emergency permit holders and upgrade the faculty. However, a rule of law providing school districts with the unilateral flexibility of walking away from contracts with holders of emergency permits is not warranted under the current provisions of the Education Code. (See generally Wonnell, *Expectation, Reliance, and the Two Contractual Wrongs* (2001) 38 San Diego L.Rev. 53, 63-66).

---

[12]The declaration of the Golden Valley's superintendent filed with the trial court is not so specific as to indicate how many, if any, of the applicants were qualified for the position held by Curran.

The logical implication of section 44300 is that the diligent search by a school district must be performed before entering into a contract with a teacher holding an emergency permit. Furthermore, Golden Valley's obligation to apply for the emergency permit is imposed by implication under the contract, because such an obligation is necessary to carry the contract into effect. (Civ. Code, § 1656; *Tarquinio v. Franklin-McKinley School Dist.* (1979) 88 Cal.App.3d 832, 836 [152 Cal.Rptr. 108].) Accordingly, we reject the argument that Golden Valley was prohibited by statute from applying for an emergency permit for Curran. (See *California Teachers Assn. v. Commission on Teacher Credentialing, supra,* 7 Cal.App.4th 1469.)

## IV

### APPLICABILITY OF PROCEDURES GOVERNING MIDYEAR DISMISSALS OF PROBATIONARY EMPLOYEES

As a probationary employee, Curran could not be dismissed after the school year began without prior written notice of dismissal and the right to a hearing pursuant to section 44948.3, subdivision (a). Golden Valley argues that there was no employment relationship to terminate because Curran had not fulfilled the conditions precedent in its offer of employment. We conclude the issue of whether a teacher satisfied the conditions precedent specified in the contract with the school district and thereby caused mutual contractual obligations to come into effect is analogous to the issue of whether a teacher's breach of a covenant in the contract was sufficient to terminate the contract. Accordingly, a determination that a school district no longer owes any obligations to a teacher under a contract should be subject to the same procedures applicable to the termination of a teacher's contract during the school year.

Because Curran was not given written notice and a right to a hearing on the issue of whether she complied with the conditions in her contract, we conclude her petition for a peremptory writ of mandate should have been granted.

## V

### PROCEEDINGS ON REMAND

On remand, the trial court shall grant the petition for peremptory writ of mandate and shall make the findings of fact and conclusions of law it deems necessary to determine the appropriate relief. The prayer in the petition requests reinstatement with backpay and benefits or, alternatively,

backpay and benefits for the 1999-2000 school year. The prayer also requests declaratory relief, attorney fees under Government Code section 800 or Education Code section 44944, subdivision (e), and costs of suit.

Because the 1999-2000 school year is over and Curran has no enforceable right to employment by Golden Valley in subsequent school years, she is entitled to backpay for the 1999-2000 school year only and is not entitled to reinstatement. (See *Tarquinio v. Franklin-McKinley School Dist., supra,* 88 Cal.App.3d at p. 836.)

The trial court should consider whether Golden Valley has carried its burden of proving that Curran failed to mitigate her damages by seeking other employment through the exercise of reasonable diligence. (See *Mass v. Board of Education* (1964) 61 Cal.2d 612, 627-629 [39 Cal.Rptr. 739, 394 P.2d 579].) Among the many factors relevant to the exercise of reasonable diligence are the timing of Curran's dismissal relative to the usual hiring period for teachers and the level of competition for positions. The declaration of the superintendent of Golden Valley stating that the district received more than 25 applications from teachers who were fully credentialed and qualified to teach may reflect upon the level of competition.

If Curran is found to have exercised reasonable diligence, then her award of backpay should be reduced by the amounts that Golden Valley affirmatively proves were earned from other sources during the 1999-2000 school year (see *Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1700-1701 [8 Cal.Rptr.2d 614]), provided that the reduction consists only of earnings from employment inconsistent with the original employment. (*California School Employees Assn. v. Personnel Commission* (1973) 30 Cal.App.3d 241 [106 Cal.Rptr. 283] [earnings of wrongfully discharged school bus driver from night or weekend work which would not have been inconsistent with school employment could not be deducted].) From January 31, 2000, through May 26, 2000, Curran was employed by Clovis Unified School District as a temporary, long-term substitute teacher at Tarpey Elementary School and was paid $6,228, of which $768 was earned by extra-duty assignments as a coach. The trial court should consider whether the coaching duties and some or all of the substitute teaching duties were inconsistent with Curran's employment at Golden Valley.

Finally, the trial court should consider Curran's claim to lost benefits and whether the CTA and Curran have established they are entitled to statutory attorney fees.

### DISPOSITION

The judgment in favor of Golden Valley and its governing board is reversed and the superior court is directed to (1) vacate the order denying the

peremptory writ of mandate, (2) enter an order granting the writ, and (3) determine the appropriate relief for Curran and the CTA. Costs on appeal are awarded to appellants.

Dibiaso, J., and Cornell, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 28, 2002. Baxter, J., did not participate therein.