Filed 12/31/14; pub. order 1/29/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JENNIFER AUGUSTUS et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> ABM SECURITY SERVICES, INC., <br><br> Defendant and Appellant. | B243788 & B247392 <br><br> (Los Angeles County <br> Super. Ct. Nos. BC336416, BC345918, <br> CG5444421) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Carolyn B. Kuhl, Judge; John Shepard Wiley, Judge. Affirmed in part and reversed in part.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Theane Evangelis, Andrew G. Pappas and Bradley J. Hamburger; Littler Mendelson, Keith A. Jacoby and Dominic J. Messiha for Defendant and Appellant.

Paul Hastings, Paul Grossman for California Employment Law Council and Employers Group as Amicus Curiae on behalf of Defendant and Appellant.

Thompson & Knight, David R. Ongaro as Amicus Curiae on behalf of Defendant and Appellant.

Horvitz & Levy, John A. Taylor, Jr., Robert H. Wright and Felix Shafir as Amicus Curiae on behalf of Defendant and Appellant.

Shaw Valenza, D. Gregory Valenza as Amicus Curiae on behalf of Defendant and Appellant.

Roxborough, Pomerance, Nye & Adreani, Drew E. Pomerance, Michael B. Adreani and Marina N. Vitek; The Ehrlich Law Firm, Jeffrey Isaac Ehrlich; Initiative Legal Group, Monica Balderrama and G. Arthur Meneses; Scott Cole & Associates, Scott Edward Cole and Matthew R. Bainer; Law Offices of Alvin L. Pittman, Alvin L. Pittman for Plaintiffs and Respondents.

Law Offices of Louis Benowitz, Louis Benowitz as Amicus Curiae on behalf of Plaintiffs and Respondents.

The Turley Law Firm, William Turley and David T. Mara as Amicus Curiae on behalf of Plaintiffs and Respondents.

_____

Plaintiff Jennifer Augustus and others, formerly security guards employed by defendant ABM Security Services, Inc. (hereafter ABM), allege on behalf of themselves and a class of similarly situated individuals that ABM failed to provide rest periods required by California law in that it failed to relieve security guards of all duties during rest breaks, instead requiring its guards to remain on call during breaks. The trial court certified a class and granted plaintiffs' motion for summary adjudication, concluding an employer must relieve its employees of all duties during rest breaks, including the obligation to remain on call. Plaintiffs then moved for summary judgment on the issue of damages, seeking unpaid wages, interest, penalties, attorney fees and an injunction. Finding no triable issue as to whether ABM was subject to approximately $90 million in statutory damages, interest, penalties, and attorney fees, the court granted the motion.

The summary adjudication and summary judgment orders rest on the premise that California law requires employers to relieve their workers of all duty during rest breaks. We conclude the premise is false, and therefore reverse the orders. We affirm the certification order.

2

## Background

ABM employs thousands of security guards at locations in California. At some sites only a single guard is stationed, while at others dozens could be stationed. Augustus, Emmanuel Davis, and Delores Hall worked for ABM as security guards.

A typical ABM policy document, entitled "Post Orders," provides that "[t]he primary responsibility of Security at [a guarded facility] is to provide an immediate and correct response to emergency/life safety situations (i.e. fire, medical emergency, bomb threat, elevator entrapments, earthquakes, etc.) [¶] In addition, the Security officers must provide physical security for the building, its tenants and their employees. The security officer can accomplish this task by observing and reporting all unusual activities. In essence, the officer is the eyes and ears of the Building Management." According to the Post Orders, as part of his or her duties a security guard may be required to patrol guarded buildings, identify and report safety issues, hoist and lower flags, greet visitors, assist building tenants and visitors, respond to emergencies, provide escorts to parking lots, monitor and restrict access to guarded buildings, eject trespassers, monitor and sometimes either restrict or assist in moving property into and out of guarded buildings, direct vehicular traffic and parking, and make reports.

Employers must "afford their nonexempt employees meal periods and rest periods during the workday." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1018 (*Brinker*); see Lab. Code, §§ 226.7, 512; Industrial Welfare Commission (IWC) wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040), hereafter Wage Order No. 4.)[1] An employee who works more than three and one-half hours per day must be permitted to take a paid 10-minute rest period—during which the employee shall not be required "to work"—per every four every hours of work or major fraction thereof. (Cal.

---

[1] The IWC has issued 18 wage orders. Wage Order No. 4 governs security guard employees, among others. Other wage orders impose similar meal and rest period requirements for other nonexempt employees in California. For example, Wage Order No. 5, which is discussed in *Brinker*, governs restaurant employees. The pertinent provisions of that wage order are identical to those at issue here.

Code Regs., tit. 8, § 11040, subd. (12)(A); Lab. Code, § 226.7, subd. (b).)[2]  An employee who works at least five hours must also be given a 30-minute unpaid meal break, during which the employee must be "relieved of all duty" if the meal period is not to be counted as time worked.  (Cal. Code Regs., tit. 8, § 11040, subd. (11)(A).)  Employers who fail to provide proper meal and rest periods must pay premium wages.  (§ 226.7, subd. (b); Wage Order No. 4, subds. 11(B), 12(B); *Brinker*, *supra*, 53 Cal.4th at p. 1018.)

In 2005, Augustus filed a putative class action, seeking to represent all security guards employed by ABM.  In 2006, her complaint was related to and consolidated with similar complaints filed by Davis and Hall, and a master complaint was filed.  The master complaint alleges ABM "fail[ed] to consistently provide uninterrupted rest periods," or premium wages in lieu of rest breaks, as required by section 226.7.[3]  (See Wage Order No. 4, subd. (12).)

In the course of discovery, ABM admitted it requires its security guards to keep their radios and pagers on during rest breaks, to remain vigilant, and to respond when needs arise, such as when a tenant wishes to be escorted to the parking lot, a building manager must be notified of a mechanical problem, or an emergency situation occurs.  Plaintiffs contend a security guard's rest period is therefore indistinguishable from normal security work, which renders every rest break invalid.

A.     **Class Certification**

In 2008, plaintiffs moved for class certification, arguing class certification was warranted because, inter alia, ABM had a uniform companywide policy requiring all guards to remain on duty during their rest breaks.  Plaintiffs argued the legality of this policy could most appropriately be decided on a classwide basis, and records maintained by ABM could be used to identify and quantify violations.

---

[2] Undesignated statutory references will be to the Labor Code.

[3] Plaintiffs also alleged ABM failed to provide meal periods as required by sections 226.7 and 512.  That claim is not at issue on this appeal.

Plaintiffs supported the motion with the deposition testimony of Fred Setayesh, an ABM senior branch manager, who admitted ABM guards are not relieved of all duties during rest breaks. For example, he explained, "if they have a radio, they want to have the radio on while they're having their meal; if they have a cell phone, a pager, if there is an emergency or situation just happen to happen at that moment, the person can assist the building operating staff and then go back and finish his or her break." Setayesh also testified that if the magnitude of the emergency was large enough, every security officer would be required to respond regardless of what they were doing at the time.

ABM opposed class certification, arguing that the determination of whether any particular on-call rest break was interrupted by a return to duty would require an individualized inquiry not amendable to class treatment. ABM submitted declarations and deposition testimony of numerous employees, including the named plaintiffs, each of whom stated he or she was provided and took uninterrupted rest breaks.

The trial court granted certification in 2009, stating without elaboration that plaintiffs had "provided substantial evidence that the common factual and legal issues predominate over individual factual and legal issues." The class was defined as all ABM employees who worked "in any security guard position in California at any time during the period from July 12, 2001 through entry of judgment . . . [and] who worked a shift exceeding four (4) hours or major fraction thereof without being authorized and permitted to take an uninterrupted rest period of net ten (10) minutes per each four (4) hours or major fraction thereof worked and [had] not been paid one additional hour of pay at the employee's regular rate of compensation for each work day that the rest period was not provided."[4]

---

[4] The class period was later redefined to extend from July 12, 2001 to July 1, 2011. The class definition excluded employees who had been paid statutory penalties for rest period violations and those who had worked at sites covered by a rest period exemption obtained by ABM in 2006. The putative class is estimated to include over 10,000 ABM employees.

**B.     Summary Adjudication**

In 2010, plaintiffs moved for summary adjudication of their rest period claim, contending it was undisputed ABM's employees were required to remain on call during their rest breaks, which according to Division of Labor Standards Enforcement (hereafter DLSE) Opinion Letter 2002.02.22 rendered them per se invalid.  Plaintiffs supported the contention with Setayesh's admission during deposition that ABM security guards were not relieved from all duties during rest breaks.  Plaintiffs offered no evidence indicating anyone's rest period had ever been interrupted.

ABM opposed the motion, submitting substantial and uncontroverted evidence, including the deposition testimony of the named plaintiffs themselves, that class members regularly took uninterrupted rest breaks during which they performed no work but engaged in such leisure activities as smoking, reading, and surfing the Internet.  ABM noted plaintiffs' failure to provide any example of a rest break having actually been interrupted and submitted affirmative evidence that any rest period interrupted by a call back to service could be restarted after the situation necessitating the callback was resolved.  ABM argued the mere risk of interruption, especially when there was no evidence of actual interruption, did not negate or invalidate a rest break.

The trial court granted plaintiffs' motion, concluding that "[w]hat is relevant is whether the employee remains subject to the control of an employer."  "In order to make sense of the statutory scheme," the court reasoned, "a rest period must not be subject to employer control; otherwise a 'rest period' would be part of the work day for which the employer would be required to pay wages in any event."

**C.     Summary Judgment**

In 2012, plaintiffs moved for summary judgment on their damages claim, contending the only remaining task was to apply the court's earlier finding to undisputed facts. Plaintiffs contended that because ABM forced its security guards to remain on duty during their rest breaks, it owed each employee an additional hour of payment, a waiting time penalty, and interest for "every single rest break taken by every single class member, for the duration of the Class Period."  Using ABM's payroll records, plaintiffs'

6

expert determined there were 14,788 class members who worked a total of 5,166,618 days of at least 3.5 hours in length. Multiplying that number by an average pay rate of $10.87 resulted in $56,102,198 in unpaid wages and restitution. Plaintiffs added a claim for $41,288,882 in accrued interest and $5,689,860 in waiting time penalties, and requested that judgment be entered in favor of the class in the amount of $103,808,940, plus costs and attorney fees.

ABM opposed the motion and moved for decertification, arguing plaintiffs' claim for $104 million "because ABM had a policy which required security guards to carry radios, is a request whose absurdity speaks for itself." ABM argued no evidence had been developed as to who among the class members had been exposed to or followed ABM's policy requiring security guards to carry radios during rest periods. On the contrary, ABM presented numerous depositions that indicated many guards took breaks without radios. Further, ABM argued plaintiffs improperly compounded interest, which inflated that cost item by more than $10 million, and that its good faith defense barred plaintiffs' claim for waiting time penalties.

In a tentative ruling issued before the hearing, the trial court incorporated its prior summary adjudication ruling and stated that "[p]ut simply, if you are on call, you are not on break." Although it acknowledged evidence existed that not all security guards were required to carry radios during their breaks, the court ruled that whether a guard actually carried a radio was immaterial, as "[t]here are many alternatives to the radio for hailing a person back to work: cell phone, pager, fetching, hailing and so on." The court found that this situation "conforms to the general pattern of evidence, which is that [ABM] required all its workers to be on-call during their breaks, and so these on-call breaks are all legally invalid."[5]

After the hearing, the court adopted its tentative ruling and granted plaintiffs' motion and denied ABM's motion for decertification, finding this was "a 15,000-person one-issue case" that was "perfect for class treatment." The court awarded plaintiffs

---

[5] ABM's request for judicial notice of the trial court's tentative ruling is granted. All Amici Curiae requests for judicial notice are granted.

$55,887,565 in statutory damages pursuant to section 226.7, $31,204,465 in pre-judgment interest, and $2,650,096 in waiting time penalties pursuant to section 203. ABM appealed from the resulting judgment.

Six months later, the court entered an amended judgment that awarded plaintiffs approximately $27 million in attorney fees, representing 30 percent of the common fund, plus $4,455,336.88 in fees under Code of Civil Procedure section 1021.5. ABM appealed from the amended judgment. We consolidated the two appeals.

## Discussion

### A. Standards of Review

In reviewing an order granting summary judgment, we view the evidence and any reasonable inferences that may be drawn from it "in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.) We will affirm the order only "'if all the papers submitted show' that 'there is no triable issue as to any material fact' [citation]." (*Ibid*.) However, the trial court's interpretation of section 226.7 and Wage Order No. 4 on materially undisputed facts raises purely issues of law. That interpretation is therefore subject to independent review. (*Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1448; *California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375.)

We will affirm an order granting class certification if any of the trial court's stated reasons is valid and sufficient to justify the order and is supported by substantial evidence. (*Sav-On Drug Stores, Inc.* (2004) 34 Cal.4th 319, 326-327 (*Sav-On*) [trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting a class action and therefore enjoy broad discretion to grant or deny certification]; *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1106 ["a certification ruling not supported by substantial evidence cannot stand"].) However, even a ruling supported by substantial evidence will be reversed if improper criteria were used or erroneous legal assumptions made. (*Sav-On*, *supra*, 34 Cal.4th at pp. 326–327; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436.) A trial court's decision that rests on an error of law is

8

itself an abuse of discretion. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 629.)

## B.     Wage Orders and the Labor Code

"Nearly a century ago, the Legislature responded to the problem of inadequate wages and poor working conditions by establishing the IWC and delegating to it the authority to investigate various industries and promulgate wage orders fixing for each industry minimum wages, maximum hours of work, and conditions of labor. [Citations.] Pursuant to its 'broad statutory authority' [citation], the IWC in 1916 began issuing industry- and occupationwide wage orders specifying minimum requirements with respect to wages, hours, and working conditions [citation]. In addition, the Legislature has from time to time enacted statutes to regulate wages, hours, and working conditions directly. Consequently, wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC. [Citations.] [¶] We apply the usual rules of statutory interpretation to the Labor Code, beginning with and focusing on the text as the best indicator of legislative purpose. [Citation.] '[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.' [Citations.] [¶] In turn, the IWC's wage orders are entitled to 'extraordinary deference, both in upholding their validity and in enforcing their specific terms.' [Citation.] When a wage order's validity and application are conceded and the question is only one of interpretation, the usual rules of statutory interpretation apply. [Citations.] As with the Labor Code provisions at issue, the meal and rest period requirements we must construe 'have long been viewed as part of the remedial worker protection framework.' [Citation.] Accordingly, the relevant wage order provisions must be interpreted in the manner that best effectuates that protective intent. [Citations.] [¶] The IWC's wage orders are to be accorded the same dignity as statutes. They are 'presumptively valid' legislative regulations of the employment relationship [citation],

9

regulations that must be given 'independent effect' separate and apart from any statutory enactments [citation]. To the extent a wage order and a statute overlap, we will seek to harmonize them, as we would with any two statutes." (*Brinker*, *supra*, 53 Cal.4th at pp. 1026-1027.)

Here, we consider the scope and duties Wage Order No. 4 and sections 226.7 and 512 impose on a security company to afford rest periods to its employees, and whether in light of those duties the trial court erred in granting summary judgment and declining to decertify the class.

**C.      Summary Judgment: The Nature of a Rest Period**

ABM's duty to provide rest periods is defined by subdivision 12 of Wage Order No. 4, which provides in relevant part: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." (Wage Order No. 4, subd. (12)(A).)

The text of the wage order does not describe the nature of a rest period, but section 226.7 offers a partial definition: "An employer shall not require an employee *to work* during a meal or rest or recovery period." (Italics added.) The DLSE has never stated specifically whether an on-call rest period is permissible. Section 226.7 therefore provides our only guidance as to the nature of a rest break, and it says only that an employee cannot be required "to work" during a break.

Here, although ABM's security guards were required to remain on call during their rest breaks, they were otherwise permitted to engage and did engage in various non-work activities, including smoking, reading, making personal telephone calls, attending to personal business, and surfing the Internet. The issue is whether simply being on-call constitutes performing "work." We conclude it does not.

10

Because ABM guards must respond to emergency and nonemergency calls while either on duty or on a break, the idea that a security guard never rests has certain appeal. But according to ABM's Post Orders, an on-duty security guard does more than merely wait for calls. As described briefly above, a guard must actively observe the guarded campus while on duty and perform many tasks not required during rest periods. For example, it is undisputed that a guard need not greet visitors, raise or lower the campus's flags, monitor traffic or parking, or observe or restrict movement of persons and property while taking a break. Admittedly, an on-call guard must return to duty if called to do so, but remaining available to work is not the same as actually working.

This conclusion is bolstered by contrasting subdivision 12(A) of Wage Order No. 4, which pertains to rest periods, and subdivision 11(A), pertaining to meal periods. Subdivision 11(A) requires that an employee be "relieved of all duty" during a meal period.[6] Subdivision 12(A) contains no similar requirement. If the IWC had wanted to prescribe that an employee be relieved of all duty during a rest period, it knew how to do so. That it did not indicates no such requirement was intended.

---

[6] Subdivision 11(A) of Work Order No. 4 provides: "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time."

Subdivision 12(A) provides: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."

11

Not only did the IWC decline to distinguish between on- and off-duty rest periods, its prescription that on-duty meal periods be paid, coupled with the mandate that *all* rest periods be paid, implies rest periods are normally taken while on duty, i.e., while subject to employer control. There is no support, therefore, in the text of Wage Order No. 4, the Labor Code, or any DLSE opinion letter for plaintiffs' claim that a rest break is valid only if the employee is relieved of all duties.

Plaintiffs argue both the DLSE in 2002 and the Court of Appeal in *Faulkinbury v. Boyd & Associates, Inc*. (2013) 216 Cal.App.4th 220, 237 recognized that Wage Order No. 4 requires that all rest breaks be duty free. Not so.

In 2002 the DLSE was asked by an employer whether short intervals during which an employee was required to change work stations, which apparently occurred multiple times per shift, could be aggregated and count as a "net" 10-minute rest period. The DLSE opined it could not, stating: "[T]here must be a net 10 minutes of rest provided in each 'work period' and the rest period must be, as the language implies, duty-free. This requirement would, of course, preclude the employer from using time during which the employee is required to change from one work station to another . . . ." (Dept. Industrial Relations, DLSE, Acting Chief Counsel Anne Stevason, Opn. Letter No. 2002.02.22, Rest Period Requirements (Feb. 22, 2002) p. 1 <http://www.dir.ca.gov/dlse/opinions/2002-02-22.pdf> [as of Oct. 14, 2014].)[7] The DLSE thus opined only that the employer's practice of requiring its employees to move from one work station to the next did not constitute a rest period because (1) the move itself constituted a "duty" and (2) no single move provided 10 minutes of down time. The DLSE was not asked and did not examine whether an on-call rest period—where no active duties were performed—would be improper.

In *Faulkinbury v. Boyd & Associates*, a security guard company maintained no "policy regarding the provision of rest breaks to security guards and had an express policy requiring all security guards to remain at their posts at all times." (*Faulkinbury v.*

---

[7] DLSE opinion letters are not controlling but constitute an informed judgment to which courts may resort for guidance. (*Brinker*, *supra*, 53 Cal.4th at p. 1029, fn. 11.)

*Boyd & Associates*, *supra*, 216 Cal.App.4th at p. 236.)  The issue was whether the employer's lack of a rest break policy could be determined on a classwide basis.  To examine that issue the court stated the policy would be measured at trial against the relevant rest break requirements, including Wage Order No. 4 and the 2002 DLSE opinion letter discussed above, both of which it quoted.  The court concluded that "the lawfulness of [the employer's] lack of rest break policy and requirement that all security guard employees remain at their posts can be determined on a classwide basis." (*Id.* at p. 237.)  The court undertook no analysis of the 2002 DLSE opinion letter or Wage Order No. 4 and made no attempt to examine the merits of the employer's policy or determine the scope of the DLSE's opinion that rest periods must be duty free.

Plaintiffs argue the Supreme Court in *Brinker* held that an employer must relieve an employee of all duty on a rest break and relinquish any control over how the employee spends his or her time.  We disagree.

In *Brinker*, the trial court certified a class of restaurant employees who alleged the defendants violated state laws requiring meal and rest breaks.  (*Brinker*, *supra*, 53 Cal.4th at pp. 1017-1019.)  The class definition included several subclasses, including rest period and meal period subclasses.  (*Id.* at p. 1019.)  The Court of Appeal held the trial court erred in certifying the subclasses and granted writ relief to reverse class certification.  (*Id.* at p. 1021.)  The California Supreme Court granted review "to resolve uncertainties in the handling of wage and hour class certification motions." (*Ibid.*)

In its opinion, the Supreme Court reviewed general class action principles, then addressed the extent to which a trial court must address the elements and merits of a plaintiff's claim when deciding whether to certify a class.  (*Brinker*, *supra*, 53 Cal.4th at p. 1023.)  The court recognized that "[w]hen evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them." (*Id.* at pp. 1023-1024.)  "Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate.  To the extent the propriety of certification depends upon disputed threshold

13

legal or factual questions, a court may, and indeed must, resolve them. Out of respect for the problems arising from one-way intervention, however, a court generally should eschew resolution of such issues unless necessary. [Citations.] Consequently, a trial court does not abuse its discretion if it certifies (or denies certification of) a class without deciding one or more issues affecting the nature of a given element if resolution of such issues would not affect the ultimate certification decision." (*Id*. at p. 1025.) The court then considered an employer's duties under the Labor Code and IWC wage orders to afford rest and meal periods to employees. (*Brinker*, *supra*, 53 Cal.4th at pp. 1027-1028.)

As to a rest period claim, the court held that under the applicable wage order an employer must provide an employee with a 10-minute rest break for shifts from three and one-half hours to six hours in length, a 20-minute rest break for shifts of more than six hours up to 10 hours, and a 30-minute rest break for shifts of more than 10 hours up to 14 hours. (*Brinker*, *supra*, 53 Cal.4th at p. 1029.) The defendant employers' policy provided only one 10-minute rest break for every four hours worked, and failed to provide a second break after six hours. (*Id*. at p. 1033.) The court held the rest break subclass was properly certified because "[c]lasswide liability could be established through common proof if [the plaintiffs] were able to demonstrate that, for example, [the employers] under this uniform policy refused to authorize and permit a second rest break for employees working shifts longer than six, but shorter than eight, hours." (*Ibid*.) The court held that "[c]laims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." (*Ibid*.) The court noted that class certification did not depend on resolution of "threshold legal disputes over the scope of the employer's rest break duties"—it addressed the merits of those disputes only at the parties' request. (*Id*. at pp. 1033-1034.) Absent such a request, it is generally "far better from a fairness perspective" to decide class certification independently from the merits. (*Ibid*.)

As to a meal break claim, the *Brinker* court again first considered the nature of an employer's duty under the Labor Code and wage orders to provide a meal period,

14

concluding, "an employer's obligation when providing a meal period is to relieve its employee of all duty for an uninterrupted 30-minute period." (*Brinker*, *supra*, 53 Cal.4th at p. 1038.) The court held: "An employer's duty with respect to meal breaks [citations] is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. What will suffice may vary from industry to industry, and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law. [¶] On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay [citations]." (*Id*. at pp. 1040-1041.)

The Supreme Court remanded the matter to the trial court to reconsider certification of the meal break subclass in light of the court's clarification of the law. (*Brinker*, *supra*, 53 Cal.4th at pp. 1049-1051.) The court explained its ruling on the merits, "solicited by the parties, has changed the legal landscape; whether the trial court may have soundly exercised its discretion before that ruling is no longer relevant. At a minimum, our ruling has rendered the class definition adopted by the trial court overinclusive: The definition on its face embraces individuals who now have no claim against [the employers]. In light of our substantive rulings, we consider it the prudent course to remand the question of meal subclass certification to the trial court for reconsideration in light of the clarification of the law we have provided." (*Id*. at pp. 1050-1051.)

15

Although *Brinker* is instructive on several levels, it said nothing about an employer's obligation to relieve an employee of all duty on a *rest* break. The discussion in *Brinker* regarding the relieved-of-all-duty requirement concerned meal periods only.[8]

Plaintiffs argue the *Brinker* standard applies with equal force to both meal and rest breaks. The argument is without merit. As discussed above, subdivision 11(A) of Wage Order No. 4 obligates an employer to relieve an employee of all duty on an unpaid meal break. Subdivision 12(A) of Wage Order No. 4 contains no similar requirement. Nor does section 226.7, which states only that an employee cannot be required "to work" on a rest break. Meal breaks are unpaid while rest breaks are paid. Meal breaks last 30 minutes; rest breaks last 10 minutes. Meal breaks and rest breaks are thus qualitatively different, and the *Brinker* standard applies to the former by mandate of subdivision 11(A) but not to the latter, which has no similar mandate.

Plaintiffs rely on *Morillion v. Royal Packing Co*. (2000) 22 Cal.4th 575 and *Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21 for the proposition that paid on-call rest periods are legally invalid. Neither case supports the proposition. In *Morillion*, the Supreme Court held that the time employees were required to spend traveling to the employer's work site on the employer's buses was compensable work time. (22 Cal.4th at p. 578.) In *Aguilar*, the court held employees required to remain at group homes during an overnight shift, during which they were allowed to sleep but required to remain on call, was compensable work time. (234 Cal.App.3d at pp. 24, 30.) But what constitutes compensable work time is not the issue here—pursuant to Wage Order No. 4, a rest period is already compensable work time. The question is what constitutes an acceptable rest period. On that issue, *Morillion* and *Aguilar* provide no guidance.

In sum, Labor Code section 226.7, contrary to the trial court's ruling, prescribes only that an employee not be required to work on a rest break, not that he or she be

---

[8] Although the plaintiffs in *Brinker alleged* the employer defendant violated the Labor Code by failing to relieve employees of all duty during rest periods, the Supreme Court was not asked to and did not evaluate the merits of that claim.

16

relieved of all duties, such as the duty to remain on call. Remaining on call does not itself constitute performing work. (See DLSE Opn. Letter No. 1993.03.31 (Mar. 31, 1993) p. 4 [DLSE declining to "take the position that simply requiring [a] worker to [remain on call] is so inherently intrusive as to require a finding that the worker is under the control of the employer" and must be compensated for "on-call" time]; DLSE Opn. Letter No. 1994.02.16 (Feb. 16, 2002) p. 4 [same]; DLSE Opn. Letter 1998.12.28 (Dec. 28, 1998) p. 4 [same].)

Because on-call rest breaks are permissible, the trial court erroneously granted summary adjudication in 2010 and summary judgment in 2012. Those orders and the consequent order granting plaintiffs' attorneys' fees under Code of Civil Procedure section 1021.5 must therefore be reversed.

## D. Class Certification

ABM contends the trial court erred in certifying a class because there is no evidence of a uniform policy requiring employees to remain on call during rest breaks. We disagree.

Under section 382 of the Code of Civil Procedure, a class action is authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." "Drawing on the language of Code of Civil Procedure section 382 and federal precedent," our Supreme Court has "articulated clear requirements for the certification of a class. The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker*, *supra*, 53 Cal.4th at p. 1021; see *Sav-On*, *supra*, 34 Cal.4th at p. 326.)

The "community of interest" requirement embodies three elements: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Sav-On*, *supra*, 34 Cal.4th at p. 326.) Common issues predominate when they would be "the principal issues in any individual action, both in terms of time to be

17

expended in their proof and of their importance." (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 810.) Class members "must not be required to individually litigate numerous and substantial questions to determine [their] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 460.)

The question of certification is essentially procedural and does not involve the legal or factual merits of the action. (*Sav-On*, *supra*, 34 Cal.4th at p. 326.) The ultimate question is whether class treatment is "superior means of resolving the litigation, for both the parties and the court. [Citation.] 'Generally, a class suit is appropriate "when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer." [Citations.]' [Citation.] '[R]elevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing.' [Citation.] '[B]ecause group action also has the potential to create injustice, trial courts are required to "'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.'"'" (*Newell v. State Farm General Ins. Co*. (2004) 118 Cal.App.4th 1094, 1101.)

ABM has maintained throughout the certification and summary judgment proceedings that the on-call nature of a rest break for a security guard is an industry necessity. For example, in its separate statement of additional facts in opposition to plaintiffs' motion for summary adjudication, ABM stated that "[g]uards simply must keep their radios or pagers on in case an emergency—fire, flood, criminal activity, medical crisis or bomb threat—should arise to ensure the safety of the facility and its tenants." ABM cited in support of this statement Setayesh's deposition testimony to that

18

same effect: If the magnitude of the emergency was large enough, all security officers would be required to respond regardless of what they were doing at the time.

From ABM's concession and Setayesh's testimony the trial court could reasonably conclude ABM possessed a uniform policy of requiring its security guards to remain on call during their rest breaks. Indeed, ABM never denied this policy below. Whether such a policy is permissible is an issue "eminently suited for class treatment." (*Brinker*, *supra*, 53 Cal.4th at p. 1033.)

ABM cites to substantial evidence indicating the policy was not uniformly applied, but such evidence would go only to the issue of damages. The trial court could reasonably conclude the necessity of individual proof of damages would not destroy the community of interest. (*Faulkinbury v. Boyd & Associates, Inc*., *supra*, 216 Cal.App.4th at p. 237.)

## Disposition

The orders granting summary adjudication and summary judgment are reversed and the amended judgment vacated. The order certifying the class is affirmed. Both sides are to bear their own costs on appeal.

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

JOHNSON, J.

19

Filed 1/29/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JENNIFER AUGUSTUS, et al., | B243788 & B247392 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. Nos. BC336416, BC345918, CG5444421) |
| v. | |
| ABM SECURITY SERVICES, INC., | ORDER MODIFYING OPINION AND DENYING REHEARING; CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |
| | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 31, 2014, be modified as follows:

1.     On page 11, the following two paragraphs are added at the top of the page:

"The word "work" is used as both a noun and verb in Wage Order No. 4, which defines "Hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  (Cal. Code Regs., tit. 8, § 11040, subd. 2(K).)  In this definition, "work" as a noun means "employment"—time during which an employee is subject to an employer's control.  "Work" as a verb means "exertion"—activities an employer may suffer or permit an employee to perform.  (See *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123* (1944) 321 U.S. 590, 598 [work is "physical or mental exertion (whether burdensome or not) controlled or required by the employer and

pursued necessarily and primarily for the benefit of the employer and his business"].)
Section 226.7, which as noted provides that "[a]n employer shall not require an employee
to work during a meal or rest or recovery period," uses "work" as an infinitive verb
contraposed with "rest." It is evident, therefore, that "work" in that section means
exertion on an employer's behalf.

"Not all employees at work actually perform work. "'[A]n employer, if he
chooses, may hire a man to do nothing, or to do nothing but wait for something to
happen. . . . [I]dleness plays a part in all employments in a stand-by capacity.'"
(*Mendiola v. CPS Security Solutions, Inc*. (2015) 2015 Cal. LEXIS 3, 9-10 (*Mendiola*),
quoting *Armour & Co. v. Wantock* (1944) 323 U.S. 126, 133.) Remaining on call is an
example. On-call status is a state of being, not an action. But section 226.7 prohibits
only the action, not the status. In other words, it prohibits only working during a rest
break, not remaining available to work.

2. On page 11 continuing to page 12, the now-second paragraph, which begins
with "Because ABM guards," along with the next two paragraphs, are stricken and
replaced with the following:

"This conclusion is bolstered by contrasting subdivision 12(A) of Wage Order No.
4, which pertains to rest periods, and subdivision 11(A), pertaining to meal periods.
Subdivision 11(A) requires that an employee be "relieved of all duty" during a meal
period.[7] Subdivision 12(A) contains no similar requirement. If the IWC had wanted to
relieve an employee of all duty during a rest period, including the duty to remain on call,

_____

[7] Subdivision 11(A) of Work Order No. 4 provides: "No employer shall employ
any person for a work period of more than five (5) hours without a meal period of not less
than 30 minutes, except that when a work period of not more than six (6) hours will
complete the day's work the meal period may be waived by mutual consent of the
employer and the employee. Unless the employee is relieved of all duty during a 30
minute meal period, the meal period shall be considered an 'on duty' meal period and
counted as time worked. An 'on duty' meal period shall be permitted only when the
nature of the work prevents an employee from being relieved of all duty and when by
written agreement between the parties an on-the-job paid meal period is agreed to. The
written agreement shall state that the employee may, in writing, revoke the agreement at
any time."

2

it knew how to do so.  That it did not indicates no such requirement was intended.  On the contrary, the IWC's order that an on-duty meal period must be paid implies an on-duty rest period, which is also paid, is permissible:  It would make no sense to permit a 30-minute paid, on duty meal break but not a 10-minute paid rest break.

"Plaintiffs argue a security guard's on-call rest time constitutes work for purposes of section 226.7 because it is indistinguishable from any other part of the guard's workday, as a guard is always on call.  The argument is without merit.  First, section 226.7 does not require that a rest period be distinguishable from the remainder of the workday, it requires only that an employee not be required "to work" during breaks.  Even if an employee did nothing but remain on call all day, being equally idle on a rest break does not constitute working.  At any rate, although the idea that a security guard never rests has a certain appeal, according to ABM's Post Orders a security guard who is on call performs few if any of the activities performed by one who is actively on duty.  As described briefly above, a guard on duty must observe the guarded campus and perform many tasks, for example, greeting visitors, raising or lowering the campus's flags, or monitoring traffic or parking.  No evidence in the record suggests an ABM guard taking a rest break is required to do any of these things.  Admittedly, an on-call guard must return to duty if requested, but as discussed above and implicitly acknowledged in *Mendiola*, *supra*, remaining available to work is not the same as performing work."

3.      On page 13, the first full sentence, beginning with "The issue was whether . . . ," is stricken and replaced with the following:

"The issue was whether the scope of the employer's rest break policy could be determined on a classwide basis."

4.      On page 16, the third paragraph is stricken and replaced with the following:

"Plaintiffs rely on *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575 and *Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21 for the proposition that on-call rest periods are legally invalid.  Neither case supports the proposition.  In *Morillion*, the Supreme Court held that the time during which employees

3

were required to travel to the employer's work site on the employer's buses was compensable work time.  (22 Cal.4th at p. 578.)  In *Aguilar*, the court held that time employees were required to remain at group homes during an overnight shift, during which they could sleep but had to remain on call, was compensable work time.  (234 Cal.App.3d at pp. 24, 30.)  What constitutes compensable work time is not the issue here, as it is undisputed rest breaks are compensable.  The question is whether section 226.7 prohibits on-call rest periods.  On that issue, *Morillion* and *Aguilar* provide no guidance."

5.　　The last paragraph on page 16, running over to page 17, is stricken and replaced with the following:

"In sum, although on-call hours constitute "hours worked," remaining available to work is not the same as performing work.  (See *Mendiola*, *supra*, 2015 Cal. LEXIS at p. 9 [distinguishing readiness to serve from service itself]; see also Cal. Code Regs., tit. 8, § 11040, subd. 2(K) [distinguishing "hours worked" from work actually performed].)  Section 226.7 proscribes only work on a rest break."

There is no change in the judgment.

Respondents' petition for rehearing is denied.

The opinion in the above-entitled matter was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.

_____

　　ROTHSCHILD, P. J.　　　　　CHANEY, J.　　　　　JOHNSON, J.

4